The **HEDRICK COMMUNITY SCHOOL DISTRICT, Appellant,**

v.

**SOUTHERN PRAIRIE AREA EDUCATION AGENCY 15, Appellee.**

No. 87–1296.

Supreme Court of Iowa.

Dec. 21, 1988.

Kenneth L. Keith and Lloyd E. Keith of Keith & Orsborn, Ottumwa, for appellant.

Richard J. Gaumer of Webber, Gaumer, Emanuel & Daily, P.C., Ottumwa, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

The dispute in this case involves the approval of a school district reorganization petition by the defendant, the Southern Prairie Area Education Agency. The plaintiff, the Hedrick Community School District, contends that the agency failed to substantially comply with the statutory requirements for such approval and that the petition, therefore, should not be submitted to the voters. The district court disagreed, and we affirm its decision.

I. *Facts and Background Proceedings.*

School district reorganization is regulated by Iowa Code chapter 275. The declared policy of the chapter is to "encourage economical and efficient school districts which will ensure an equal educational opportunity to all children of the state." Iowa Code § 275.1 (1985).

Beginning on July 1, 1975, area education agencies replaced county school boards. 1974 Iowa Acts ch. 1172, § 9. The agencies assumed the county school boards' responsibilities for planning the reorganizations of school districts. *Id.* at § 40.

The boundaries of the agencies' jurisdictions were originally made coterminous with those of area vocational schools and community colleges. *See id.* at § 3; Iowa Code ch. 280A (1975). In 1982 fifteen agencies were established throughout the state. 1982 Iowa Acts ch. 1136, § 1. The 1982 legislation mandated that an agency's boundaries could not divide a school district. *Id.* If such division happens because of the merger of a local school district and the corresponding change in the district's boundaries, then the agency's boundaries must be changed to accommodate the merger and prevent the division. *Id.*

As part of their responsibilities, the county boards of education had been required to have on file with the state department of public instruction reorganization plans for their school districts. *See* Iowa Code §§ 275.1–275.5 (1973). The area education agencies were likewise required to have such plans on file with the department. *See* 1974 Iowa Acts ch. 1172, §§ 40–42 (codified as Iowa Code §§ 275.1–275.5 (1975)). According to a 1975 attorney general's opinion, the counties' plans were to be turned over to the area education agencies. The plans were considered to have "continual binding effect" until the agencies, pursuant to section 275.1, initiated their own studies and surveys for school reorganizations in their areas. 1976 Op. Iowa Att'y Gen. 78, 78–79.

When the agencies were organized, it was determined that in a number of cases no such plans existed. To remedy this deficiency, the department of public instruction, in 1980, ordered the agencies to prepare and file reorganization plans.

In 1980 four statutes governed the procedure for the development of school reorganization plans. Section 275.1 (1979) directed the boards of the area education agencies to develop "detailed studies and surveys of the school districts within the area education agency and all adjacent territory." The avowed purpose for the studies and surveys was to "provid[e] for reorganization of school districts in order to effect more economical operation and the attainment of higher standards of education in the schools." Iowa Code § 275.1 (1979).

Section 275.2 (1979) determined the scope of the studies and surveys referred to in section 275.1. The studies and surveys were to include the following information regarding the various districts in the area and all districts adjacent to it:

The adequacy of the educational program, average daily attendance of pupils, property valuations, existing buildings and equipment, natural community areas, road conditions, transportation, economic factors, individual attention given to the needs of students, the opportunity of students to participate in a wide variety of activities related to the total development of the student, and such other matters that may bear on educational

programs meeting minimum standards required by law.

Iowa Code § 275.2 (1979).

According to section 275.3 (1979), no new school district could be planned by an agency board unless 300 children of school age resided in the proposed district. Exceptions were permitted under limited circumstances. *See* Iowa Code § 275.3 (1979).

In developing the studies and surveys mandated by section 275.1 the agency board was required by section 275.4 (1979) to consult with officials of the affected district, the superintendent of public instruction, and other citizens. Additionally, section 275.4 directed the superintendent to provide assistance to the board as requested. Once the plan was completed, the board was required to file it with the superintendent of public instruction. Iowa Code § 275.4 (1979).

With that background of statutory requirements Southern Prairie, in 1980, set about to develop the statutorily mandated reorganization plan. The agency hired a school reorganization expert, J. David Rossi, to conduct the statutorily required studies and surveys.

Rossi spent the better part of a year visiting every school district in the Southern Prairie area. During those visits, he set up committees of parents, students, agency board members, and other citizens to study concerns in each of their school districts and to express their preferences for the future development of their districts. As part of his work Rossi collected information about each district that was geared to the factors listed in section 275.2. This information was put in the form of a report and has come to be known as the "Rossi report."

One of the many things discussed by the various committees was the changing of district boundary lines. The various committees expressed little interest in changing these boundaries. Discussions focused more on course offerings, particularly in the area of vocational education.

Consequently, the Rossi report did not call for any change of district boundaries. It did, however, call for a large number of shared classes in and among the various school districts within the area. In September 1980 the Rossi report was adopted by the Southern Prairie board as its plan of reorganization and filed as such with the superintendent of public instruction. *See* Iowa Code § 275.4 (1979).

In 1984 there was a significant change in school reorganization law. The legislature amended Iowa Code section 275.2 by adding the following: "The plans shall also include suggested alternate plans that incorporate the school districts in the area education agency into reorganized districts that meet the enrollment standards specified in section 275.3...." 1984 Iowa Acts ch. 1078, § 2. Less significantly, the new legislation also required studies and surveys to include information on pupil enrollment. "Pupil enrollment" was substituted for "average daily attendance of pupils" specified under the old version of section 275.2. *Id.*

The statutory enrollment standards required each school district to have an enrollment of at least 300 students. *See* Iowa Code § 275.3 (1985). The new amendment required the development of alternative plans for reorganizing school districts that failed to meet the 300–student enrollment standard.

At the time of the 1984 legislation, seven districts within the Southern Prairie area had enrollments below or close to 300 students. These districts were Blakesburg, Fox Valley, Fremont, Hedrick, Lineville–Clio, Moulton–Udell, and Russell.

Because the then-current plan, the Rossi report, did not include an alternative plan for the reorganization of districts with enrollments below 300, Southern Prairie began the process of developing such a plan in September 1985. It first notified all school district superintendents in its area of the changes brought about by the 1984 legislation. It then invited the superintendents to an informational meeting to be held in October.

All of the superintendents attended the October meeting. Following Southern Prairie's suggestion, most brought school

district board members with them. Others in attendance included three Southern Prairie board members; Donald G. Roseberry, Chief Administrator for Southern Prairie; Roseberry's secretary; and Guy Ghan, from the state department of public instruction.

At the meeting Southern Prairie reviewed the 1984 legislation and discussed what it intended to do regarding the alternative plan. Ghan explained the department's role and what procedure would be used in developing the alternative plan. Roseberry told the seven districts affected by the new legislation that he wanted their involvement and suggestions in developing the plan. In addition, Roseberry told the districts that Southern Prairie would hold hearings in their districts if they so desired and suggested that they poll their districts for suggestions as to what the plan should contain.

Shortly thereafter, the department sent Southern Prairie guidelines about how to develop the plan. Those guidelines required consideration of all factors listed in section 275.2. Information regarding those factors had already been forwarded to the department by the local districts in their annual reports to the department. At the request of Southern Prairie, this information was compiled by the department and made available to the agency. Southern Prairie tabulated the information and put it into the form needed for the plan. Southern Prairie obtained other information by calling the district superintendents.

Adjacent area education agencies were contacted to determine whether such agencies intended to include in their reorganization plans any school districts located in the Southern Prairie area. None intended to do so. Because Southern Prairie likewise did not intend to include any school districts from adjacent areas, no information regarding such school districts was included in Southern Prairie's alternative plan.

While the plan was being developed, Southern Prairie's board held monthly meetings that were open to the public. At those meetings the board discussed what information was being gathered for the

plan and what was being done to develop it. Various proposals for reorganization of the affected districts were discussed. Southern Prairie set a deadline of April 1986 for the completion of hearings and information gathering. The agency determined that it needed a month thereafter to put the information into a written plan that it could submit to its board in June.

Of the affected districts only Hedrick, Russell, and Moulton–Udell requested hearings. Hedrick did not follow through and request a hearing date, apparently believing that a recommendation for merging Hedrick and Pekin would be made to the board. Because a majority of the Hedrick community did not want a merger, district school officials felt a hearing was useless. Moulton–Udell officials changed their minds and decided they did not want a hearing. Only Russell had a hearing.

The plan was put into its final form in May. The document contains fifty pages. Its preface states:

The purpose of this publication is to document the "detailed studies and surveys of the school districts within the area education agency and all adjacent territory for the purpose of providing for reorganization of school districts" and to transmit the completed plans to the Superintendent of Public Instruction as required by sections 275.1 through 275.9 of the Code of Iowa. Other than meeting the requirements of the Code, this publication is intended to provide assistance to the officials and citizens of school districts contemplating school district reorganization and to assist the AEA board of directors in the event it is presented a reorganization petition.

The plan contains all of the information for each area school district called for by section 275.2. In addition, the plan recommends the reorganizations of the seven districts with substandard enrollments, including the merger of Hedrick with Pekin. Hedrick and Pekin are contiguous, with Pekin bordering Hedrick on Pekin's west end in Wapello County.

In June 1986 the plan was submitted to Southern Prairie's board for its review.

The board gave the plan its tentative approval and set a public hearing for final approval for July 8. The superintendents of the seven affected districts received copies of the plan from Southern Prairie and were advised of the board's action. Each was encouraged to attend the July meeting and voice any concerns with the plan.

On July 7 a petition was filed with Southern Prairie's board calling for the merger of the Pekin and Hedrick school districts. *See* Iowa Code § 275.12 (1985). A public hearing on objections to the petition was set for August 12. *See* Iowa Code §§ 275.-14, 275.15. Notice was given as provided by Iowa Code section 275.14.

At the July 8 meeting, Southern Prairie's board formally adopted the plan after hearing statements from the public. The plan as adopted was transmitted to the state superintendent of public instruction on July 28, 1986. *See* Iowa Code § 275.4.

During the interim, Southern Prairie received 539 written objections to the petition. The objections were filed with the agency's board, which in turn reviewed them.

At the August 12 hearing proponents and opponents of the petition were given an opportunity to express their views. The hearing was then adjourned, and the board voted to submit the petition to the voters. *See* Iowa Code §§ 275.15, 275.18.

The Hedrick school district then filed an appeal, asking the district court to set aside the board's decision and halt the election. *See* Iowa Code § 275.15. The court found that the board had acted properly and dismissed the school district's appeal. It is from this ruling that the school district has appealed.

The point of contention here is whether the agency satisfied the statutory requirements for the petition approval process. The school district alleges seven defects: (1) the agency failed to conduct detailed studies and surveys, in violation of section 275.1; (2) the agency failed to include alternative plans in its reorganization plan, in violation of section 275.2; (3) the agency did not consult with officials and citizens regarding the proposed plan, in violation of section 275.4; (4) the agency failed to adopt a reorganization plan before the petition was filed and did not conduct further studies and surveys, in violation of section 275.-5; (5) the agency failed to describe accurately the area affected by the plan, in violation of section 275.12; (6) the agency failed to review the matter on its merits after a hearing, in violation of section 275.-15; and (7) the agency violated section 275.-9, which makes compliance with sections 275.1 to 275.5 mandatory.

## II. *Principles of Review.*

In deciding the long line of cases on this topic, we have developed several principles that are applicable when we review school district reorganization decisions.

■ Substantial compliance with reorganization statutes is sufficient. *Bloom v. Arrowhead Area Educ. Agency,* 270 N.W. 2d 594, 596 (Iowa 1978); *Board of Educ. v. Joint Bd. of Educ.,* 196 N.W.2d 423, 426 (Iowa 1972). We have defined "substantial compliance" as "compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." *Superior/Ideal, Inc. v. Board of Review,* 419 N.W.2d 405, 407 (Iowa 1988); *accord Brown v. John Deere Waterloo Tractor Works,* 423 N.W.2d 193, 194 (Iowa 1988). In determining whether compliance is substantial, we liberally construe the reorganization statutes. *Bloom,* 270 N.W.2d at 596; *Joint Bd.,* 196 N.W.2d at 426.

■ We may consider only legal questions and may not substitute our judgment for that of the education authorities regarding the wisdom and practicability of the proposed reorganization. *In re Lone Tree Community School Dist.,* 159 N.W. 2d 522, 525 (Iowa 1968); *Board of Educ. v. Bremen Township Rural Indep. School Dist.,* 260 Iowa 400, 406–07, 148 N.W.2d 419, 423 (1967). Our review is limited in this way because reorganization is a legislative, not a judicial, process. *Lone Tree,* 159 N.W.2d at 525; *Bremen Township,* 260 Iowa at 406, 148 N.W.2d at 423.

We only interfere with such local legislative matters when it appears that an edu-

cation agency has exceeded its jurisdiction or has taken an action that is arbitrary, unreasonable, or unsupported by substantial evidence in the record. *Templeton Indep. School Dist. v. Carroll County Bd. of Educ.*, 228 N.W.2d 1, 3 (Iowa 1975). Arbitrary or unreasonable action is that which is unconsidered, willful, or without a rational basis. *Id.*

In general, we will not draw fine, technical lines or indulge inferences that would invalidate a reorganization plan; to the contrary, we observe all inferences in favor of the legality of official steps. *Turnis v. Board of Educ.*, 252 Iowa 922, 938, 109 N.W.2d 198, 208 (1961).

### III. *Approval of the Reorganization Petition.*

█ Turning now to the Hedrick school district's allegations, we first consider those concerning Iowa Code sections 275.1 to 275.5 (1985). As the school district points out, section 275.9 makes the provisions of those sections "mandatory prerequisite[s] to the the effectuation of any proposal for district boundary change."

A mandatory duty is one that is essential to the main objective of the whole statute; failure to perform the duty will invalidate subsequent proceedings under the statute. *Downing v. Iowa Dep't of Transp.*, 415 N.W.2d 625, 628 (Iowa 1987). Hence, if the agency here failed to perform its duties under sections 275.1 to 275.5, which the Code itself defines as mandatory, the agency's subsequent actions were invalid.

The school district, while recognizing that the substantial compliance standard exists in this context, seems to be arguing for strict compliance with the mandatory duties. Substantial compliance is, however, still the standard by which we measure whether the mandatory duties were performed. *Cf. Boyle v. Burt*, 179 N.W.2d 513, 515 (Iowa 1970) (statute defining mandatory duty can require only substantial compliance) (citing *Halvorson v. City of Decorah*, 258 Iowa 314, 322, 138 N.W.2d 856, 862 (1965)).

The defects under the mandatory sections, according to the school district, are that the agency (1) failed to conduct detailed studies and surveys, (2) failed to include alternative plans in its reorganization plan, (3) did not consult with officials and citizens, and (4) failed to adopt a reorganization plan before the petition was filed and did not conduct further studies and surveys when the petition did not conform to the adopted plan. *See* Iowa Code §§ 275.1, 275.2, 275.4, 275.5. We disagree, and in view of the whole record, construing the statutes liberally, we hold that the agency's compliance with these sections was substantial.

First, the school district argues that the agency did not conduct the "detailed studies and surveys" required by section 275.1. It contends that the "Rossi report," which was over five years old when the reorganization petition was filed, did not satisfy this requirement because the report did not contemplate any specific reorganization.

Section 275.1 says that the purpose of conducting such studies and surveys is to provide "for [a plan of] reorganization of school districts in order to effect more economical operation and the attainment of higher standards of education." We think the Rossi report coupled with the alternative plan for districts with substandard enrollments constituted substantial compliance with this stated purpose at the time of the petition's approval in August.

The Rossi report, a lengthy and detailed study of the area school districts, was based on firsthand contact with the districts. It included all information called for by section 275.2. Moreover, contrary to the school district's contention, the report did consider boundary line changes. The conclusion of the report was that the districts were not interested in changing boundary lines but were content with the status quo. Requiring a plan to provide at all for reorganization assumes that the legislature mandated reorganization. We refused to make that assumption in *Bloom*, 270 N.W.2d at 597, and we reaffirm that view here. Section 275.1 signifies the legislature's policy of encouraging reorganization, but the statute does not mandate it except in districts maintaining less than

twelve grades. *Bloom*, 270 N.W.2d at 597. We conclude that the Rossi report was not necessarily required to include a proposed reorganization of area districts.

When the law was changed in 1984, Southern Prairie embarked on a long and tedious process to provide an alternative plan for the seven districts close to or below the 300–student enrollment standard. The alternative plan included updated information from the original plan, the Rossi report. Additionally, the alternative plan proposed mergers for the seven districts that were affected by the new law. As to the other districts the alternative plan indicated a continued policy of maintaining the status quo as long as possible:

> In most instances, the local boards have indicated that they want to maintain their school as long as possible. The general consensus is that they would first, share programs and staff with neighboring schools; second, tuition high school students to a neighboring high school; then, consider consolidation with other districts or dissolution of their school district.

Clearly, there is substantial evidence in the record that when the reorganization petition was acted upon in August, a plan of reorganization existed for those districts having an enrollment of more than 300 students, and an alternative plan existed for those districts falling below this standard. Specifically, in providing for the Hedrick–Pekin merger, the alternative plan addresses essential matters that are necessary to assure the reasonable objectives of section 275.1. As such, that plan is in substantial compliance with the statute. *See Brown*, 423 N.W.2d at 194; *Superior/Ideal*, 419 N.W.2d at 407.

Our response to the school district's first contention also answers its contention that Southern Prairie did not provide for alternative reorganization plans as required by section 275.2. That statute incorporates the 1984 change in the law that mandates the development of alternative plans for the reorganization of school districts with less than 300 students.

The school district also contends that Southern Prairie did not consult with officials and citizens regarding the reorganization plans, which would be a violation of section 275.4. The record, however, indicates that Rossi, during his year's work on the project, visited every area school district and met with committees of parents, students, agency board members, and other citizens. During such meetings these people were encouraged to express their concerns about their districts as well as their preferences for the future development of their districts.

In addition, the record indicates that as early as ten months before the current reorganization petition was approved, Southern Prairie began holding public meetings on the alternative plan and publicly aired board discussions on how the plan was developing. Both citizens and school officials were involved. Indeed, the petition itself was approved after a regularly scheduled meeting of the agency board. These meetings certainly constitute substantial compliance with section 275.4.

The school district alleges other defects in the August 12 approval of the petition. It asserts that the formal board adoption of the alternative plan had not yet occurred on July 7, when the petition was filed. Consequently, the school district concludes, additional surveys had to be conducted. The school district maintains that Iowa Code section 275.5 was violated by this alleged defect, pointing to the following language in the statute to support its contention:

> Following receipt of a petition pursuant to section 275.12, the area education agency board shall review its plans and determine whether the petition complies with the plans which *had* been adopted by the board. *If the petition does not comply with the plans* which had been adopted by the board, *the board shall conduct further surveys* pursuant to section 275.4 prior to the date set for the hearing upon the petition.

Iowa Code § 275.5 (emphasis added).

Although section 275.5 does mention prior adoption of a reorganization plan and

does mandate additional surveys when the petition differs, we do not agree with the school district's conclusion. While not formally adopted until one day after the reorganization petition was filed, the alternative plan had been given tentative approval by the agency board one month before. We will not draw a fine, technical line that would nullify this time-consuming and detailed reorganization process simply because the plan was formally adopted one day after the petition was filed. *See Turnis*, 252 Iowa at 938, 109 N.W.2d at 208.

In addition, the plan did provide for the Hedrick–Pekin merger, just as the petition requested. Section 275.5 requires further surveys because of a difference between the plan and the petition, not because of any failure to adopt the plan before the petition is filed. The timing requirement is a means to an end, not an end in itself. We think the legislature contemplated the further survey requirement as a check in the event that a petition differed from a plan. This interpretation follows because in those circumstances, the effects of the plan called for by the petition would presumably not have been studied. When the plan and petition coincide, no such check is required.

Requiring further surveys in the circumstances here would result in a useless and duplicative effort. Because no harm has been demonstrated by the premature filing of the petition, no further surveys should be required. *Cf. Brown*, 423 N.W.2d at 196 (absent a showing of prejudice, two-day premature mailing of petition substantially complied with statutory service provision). Construing the statute liberally, we think the agency board substantially complied with section 275.5. Consistent with our conclusion is this expression of legislative intent in section 275.6: "It is the intent of this chapter that the area education agency board shall carry on the program of reorganization progressively and shall, insofar as is possible, authorize submission of proposals to the electors as they are developed and approved."

We now turn to the school district's two allegations that are not based on "mandatory" code sections.

■ Section 275.12(1) provides, in part, that "[a] petition describing boundaries, or accurately describing the area included therein by legal descriptions of the proposed district ... shall be filed with the ... agency administrator." The school district contends this provision was violated by the agency's mistaken geographical description of the affected area. Apparently, 200 acres in the Hedrick school district were omitted.

This error was inadvertent and slight. The error can be corrected prior to the election. We see no reason for halting the election because of such an easily corrected problem. *Cf. Joint Bd. of Educ.*, 196 N.W. 2d at 427 (school reorganization upheld despite uncertainty over inclusion of certain areas). We note, in addition, that the provisions of section 275.12, unlike those of sections 275.1 to 275.5, are not defined to be mandatory prerequisites by section 275.- 9. No prejudice was shown to have resulted from the error in the description.

■ Finally, the school district argues that the agency did not "review the matter on its merits" as required by section 275.- 15. The board apparently took only six minutes to approve the reorganization petition.

We see nothing in section 275.15 that sets a minimum time for agency board consideration of a reorganization petition. While six minutes is very brief, it must be remembered that the agency board had been considering reorganization possibilities for at least several months before the day on which the petition was actually approved. Further, in June the board gave tentative approval to the alternative plan that recommended the Hedrick–Pekin merger. On the whole, we think the agency substantially complied with this statutory requirement.

IV. *Disposition.*

To summarize, we think the Southern Prairie Area Education Agency board substantially complied with the Iowa Code when it approved a petition involving the reorganization of the Hedrick Community

School District. To hold otherwise would be to exalt technical form over substance and to substitute our judgment for that of the agency. We agree with the decision of the district court and affirm it.

AFFIRMED.