# IN THE SUPREME COURT OF IOWA

No. 11–1498

Filed May 11, 2012

**EAST CENTRAL COMMUNITY
SCHOOL DISTRICT,**

      Appellant,

vs.

**MISSISSIPPI BEND AREA
EDUCATION AGENCY,**

      Appellee.

---

Appeal from the Iowa District Court for Jackson County, Mary E. Howes, Judge.

Appellant asserts the appellee acted unlawfully in approving for submission to the voters a petition proposing a consolidation of two school districts. **AFFIRMED.**

Andrew J. Bracken and Amanda G. Wachuta of Ahlers & Cooney, P.C., Des Moines, for appellant.

Mikkie R. Schiltz and Wendy S. Meyer of Lane & Waterman LLP, Davenport, for appellee.

**APPEL, Justice.**

In this case, we consider whether an area education agency (AEA) acted lawfully when it approved for submission to the voters a petition that proposed a consolidation of the Preston and East Central Community School Districts. East Central seeks to block the measure from being placed before the voters. In support of its position, East Central asserts that the AEA approval of the petition for submission to the voters is legally flawed because the AEA failed to comply with a statutory requirement that it develop a plan for the AEA district. Further, East Central maintains that the AEA failed to make a required statutory finding that the consolidation proposed in the petition was in conformity with the plan. The district court rejected the claims.

On appeal, we conclude that the AEA acted lawfully in approving submission of the petition to the voters.

## I. Background Facts and Proceedings.

This case involves two small school districts, Preston and East Central Community School Districts. The certified enrollment in Preston in October 2010 was 335.9 students and 370.1 students for East Central. Of these students, thirty-two and fifty, respectively, enrolled outside of the districts.

In 1986, the Mississippi Bend AEA (MBAEA) developed what was entitled "Reorganization Plan" (Plan). The Plan contains page after page of data about the school districts within the MBAEA. The Plan also includes seven alternate reorganization plans for schools within the MBAEA that had less than three hundred students enrolled in the districts. Public hearings were held in connection with the Plan, after which the Plan was reviewed and adopted by the MBAEA Board (Board).

In December 2000, the MBAEA consulted with the Iowa Department of Education (department) in updating the Plan. Preston requested the department to prepare a feasibility report addressing the possible merger of Preston and East Central. The report praised East Central and Preston for how well they had worked together and suggested a merger as an alternative. The Plan was revised, a public hearing was held, and the Board again adopted it in August. The 2000 survey conducted of the East Central and Preston Community School Districts was included in the Plan as an appendix.

In 2005, Preston and East Central again requested the department to address the possibility of a merger. The 2005 study addressed reorganization and noted that the two schools operating as independents was "not the most efficient use of time and resources, and [did] not allow for 'best practice' in the educational program."

In 2008, a petition was circulated to determine if there was support for a merger of the two school districts. Over seven hundred citizens in the two districts signed the petitions requesting the school boards and administrators to work together and consider the option of reorganization. No petition, however, was filed with the MBAEA requesting that school reorganization be submitted to the voters.

In January 2010, Preston and East Central representatives along with representatives of a third school district, the Northeast Community School District (Northeast), held discussions regarding the possibility of expanding collaboration to increase the quality of education for students. The meetings included discussion of potential reorganization options.

On May 3, a petition for reorganization of East Central and Preston was filed with the MBAEA. Approximately thirty-three percent of the

registered voters in the East Central district and fifty-four percent of all registered voters in the Preston district signed the petition.

As a result of the filing of the petition, Dr. Glenn Pelecky, Chief Administrator of the MBAEA, sent a letter dated May 10, 2010, to Board members providing the Board with information regarding the reorganization process and a history of the cooperative efforts involving Preston and East Central. The matter was discussed further on May 12 at a regular board meeting and board retreat.

The MBAEA and East Central at this point requested the department to conduct a study regarding the proposed merger. The department prepared a feasibility report dated May 21, 2010, regarding the future options for Preston, East Central, and Northeast. The department concluded that a merger between Preston and East Central was not an appropriate "intermediate step" if the goal was to join Preston, East Central, and Northeast. The department noted, however, that the discussions regarding reorganization of Preston, East Central, and Northeast had been ongoing for ten years without any result.

On June 4, Pelecky sent to members of the Board a packet of materials. The June packet included the most recent report from the department, the 1986 Reorganization Plan (as amended), and letters from community members.

On June 7, Pelecky sent to Board members additional materials, including an objection requesting that the petition be dismissed; copies of objections requesting boundary changes; and a basket of documents from the superintendent of East Central, Jim House, which included a PowerPoint presentation, financial materials, data related to enrollments, information related to high school classes, and sharing agreements between East Central and Northeast.

The Board held a hearing on the petition on June 16. After hearing almost four hours of testimony, the Board voted to "grant the approval for moving ahead with the community vote" on the question of the reorganization of Preston and East Central. A subsequent hearing on June 30 established the boundaries of the proposed merged district.

East Central filed an action in district court seeking to invalidate the action of the Board approving the petition. East Central argued, among other things, that the 1986 Reorganization Plan, along with its amendments, was flawed because it did not contain a specific plan for the merger of the Preston and East Central Community School Districts. East Central further claimed that the Board failed to make a necessary factual finding, namely, that the merger proposed in the petition was in conformity with the MBAEA's Plan. The MBAEA filed a motion for summary judgment, claiming that as a matter of law there was no requirement that the MBAEA Plan specifically describe a merger between Preston and East Central and that the action of the Board approving the petition was in accordance with law. The district court granted summary judgment, and this appeal followed.

## II. Scope of Review.

We consider the school reorganization process as a local legislative matter. *Templeton Indep. Sch. Dist. v. Carroll Cnty. Bd. of Educ.*, 228 N.W.2d 1, 3 (Iowa 1975). In engaging in judicial review, we are careful to consider only legal questions and do not substitute our judgment for the wisdom or practicality of a proposed reorganization. *In re Lone Tree Cmty. Sch. Dist.*, 159 N.W.2d 522, 525 (Iowa 1968). Our review is limited to determining whether the agency has exceeded its jurisdiction or has taken an action that is arbitrary, unreasonable, and unsupported by substantial evidence in the record. *Templeton,* 228 N.W.2d at 3. We

have defined arbitrary or unreasonable action in the school reorganization context as action "without rational basis; unconsidered, willful and irrational choice of conduct." *Id.* (citation and internal quotation marks omitted). In reviewing school consolidation matters, we "will not draw fine, technical lines or indulge inferences that would invalidate a reorganization plan." *Hedrick Cmty. Sch. Dist. v. S. Prairie Area Educ. Agency 15*, 433 N.W.2d 746, 751 (Iowa 1988). We make all inferences in favor of the legality of official steps. *Id.*

### III. Discussion.

### A. Positions of the Parties.

1. *Lack of specific plan for merger of Preston and East Central.* East Central maintains that under Iowa Code chapter 275 (2011), the MBAEA must develop a "plan" that specifically discusses a proposed merger between East Central and Preston before a petition for merger may be approved by the MBAEA and placed on the ballot. East Central cites provisions of Iowa Code sections 275.2, 275.4, and 275.5 which use the terms "plans" and "definite plans" in describing the responsibilities of the Board.

The MBAEA counters that there is no requirement that its Plan include a specific proposal for merger of school districts in which more than three hundred students are enrolled. Because enrollment in both Preston and East Central was above the three hundred student threshold, the MBAEA maintains that it had no obligation under Iowa Code chapter 275 to develop such a plan.

2. *Failure to determine compliance with plan.* East Central maintains that under Iowa Code section 275.5, an AEA board considering whether to pass a proposed merger of school districts onto the voters must first "determine whether the petition complies with the

plans which had been adopted by the board." Iowa Code § 275.5. East Central notes that the provision requiring a determination of compliance with plans is declared to be mandatory by Iowa Code section 275.9.

East Central then canvasses the record in this case and concludes that there is a genuine issue of material fact as to whether the Board actually made the determination that the proposed merger complied with its plans. East Central notes that the official Board minutes do not indicate that the Board voted on this precise issue. East Central recognizes that there is evidence to the contrary in the record, but maintains that summary judgment should not have been granted to the Board on this issue.

The MBAEA responds that the action of the Board is legislative, not judicial, and points out that judicial review is limited to determining whether the Board exceeded its jurisdiction or acted in an arbitrary, unreasonable, or unsupported manner. The MBAEA contends that the standard to be applied is one of substantial compliance. The MBAEA argues that implicit in the Board's vote granting the petition is a finding that the proposed merger complied with the plans that had been adopted by the Board.

**B. Statutory Framework.** In order to facilitate consolidation of smaller local school districts, the legislature enacted Iowa Code chapter 275. Iowa Code chapter 275 establishes a framework for school reorganization in Iowa. Originally, the county school boards had responsibilities for planning the reorganization of school districts, but beginning in July 1975, the AEAs replaced the county boards as the facilitator of school reorganization. *See Hedrick*, 433 N.W.2d at 747 (citing 1974 Iowa Acts ch. 1172, § 9).

The declared policy of Iowa Code chapter 275 is to "encourage economical and efficient school districts which will ensure an equal educational opportunity to all children of the state." Iowa Code § 275.1(2). In order to meet these objectives, the AEAs are required to develop "detailed studies and surveys of the school districts within the area education agency and all adjacent territory." *Id.* § 275.1(3). The studies and surveys were to include information about

> the adequacy of the educational program, pupil enrollment, property valuations, existing buildings and equipment, natural community areas, road conditions, transportation, economic factors, individual attention given to the needs of students, the opportunity of students to participate in a wide variety of activities related to the total development of the student, and other matters that may bear on educational programs meeting minimum standards required by law.

*Id.* § 275.2.

This information is designed to "provid[e] for reorganization of school districts in order to effect more economical operation and the attainment of higher standards of education in the schools." *Id.* § 275.1(3).

In 1984, the legislature amended Iowa Code chapter 275 to require that "the plans shall also include suggested alternate plans that incorporate the school districts in the area education agency into reorganized districts that meet the enrollment standards specified in section 275.3 [of enrollment of at least three hundred students]." *Id.* § 275.2. Iowa Code section 275.9 reinforces the importance of the substantive provisions in Iowa Code sections 275.1 through 275.5 by noting that compliance with these sections is mandatory. *Id.* § 275.9.

The process for merger or consolidation begins with a citizen petition that is submitted to the AEA. *Id.* § 275.12. Following receipt of a petition, the AEA is directed to "review its plans and determine whether

the petition complies with the plans which had been adopted by the board." *Id.* § 275.5. If the petition "does not comply" with the plans adopted by the board, the board "shall conduct further surveys pursuant to section 275.4 prior to the date set for the hearing upon the petition" and present the results of such surveys at the public hearing. *Id.* If the petition does comply with the plan, the board may set a hearing on the petition without further surveys. *Id.*

Within ten days after the petition is filed, the AEA administrator sets a date for the filing of objections and for the public hearing. *Id.* § 275.14. If the petition is not dismissed and the board determines that additional information is needed to fix boundaries, the hearing may be continued for thirty days. *Id.* § 275.15(3). After the hearing on the petition, the AEA may approve a reorganization plan for submission to the voters. *Id.* § 275.18(1).

**C. Applicable Caselaw.** Our school reorganization cases have long recognized two twin concepts. First, our cases have emphasized that a reviewing court should "liberally construe" the law relating to matters of reorganization of school districts. *Allerton-Clio-Lineville Cmty. Sch. Dist. v. Cnty. Bd. of Educ.*, 258 Iowa 846, 849, 140 N.W.2d 722, 724 (1966). Second, our cases have recognized that precise and exact compliance with school reorganization statutes is not essential; substantial compliance will suffice. *Turnis v. Bd. of Educ.*, 252 Iowa 922, 933, 109 N.W.2d 198, 205 (1961). Life has been breathed into these principles in a series of school reorganization cases.

In *Board of Education of Audubon County v. Joint Board of Education,* 196 N.W.2d 423 (Iowa 1972), we considered a challenge to a school consolidation. In *Audubon County,* the joint board did not expressly fix the method of electing directors of the new school district.

*Audubon Cnty.*, 196 N.W.2d at 426–27. Iowa Code section 275.12(4) (1971) authorized the board to review and to change the method proposed in the petition. *Id.* at 427. We held that by approval of the petition, the method of electing directors proposed was necessarily approved. *Id.* We further held that by approving the petition, the board necessarily approved boundary changes that did not conform to the county plan. *Id.* In reaching these results, the *Audubon County* court emphasized that school reorganization statutes are to be "liberally construed." *Id.*

Next, we decided *Bloom v. Arrowhead Area Education Agency*, 270 N.W.2d 594 (Iowa 1978). The question in *Bloom* was closely related, though not identical, to one of the issues in this case. In *Bloom*, Arrowhead AEA decided to adopt plans of county boards in its area as its tentative plan rather than develop a new tentative plan on its own. *Bloom*, 270 N.W.2d at 597. The county plans, however, did not provide for reorganization of the school districts. *Id.* The question in *Bloom* was whether the tentative plan, as adopted by the AEA, met the statutory requirement that a tentative plan be developed within sixty days of the submission of a petition. *See id.* (citing Iowa Code § 275.5 (1977)). We held that the tentative plan was sufficient to comply with the statute, even though it did not specifically call for the reorganization of the school districts as proposed in the petition. *Bloom*, 270 N.W.2d at 597. We further emphasized that while reorganization was encouraged by Iowa Code chapter 275, it was not required or compelled. *Id.*

In *Hedrick*, the Hedrick Community School District challenged the action of an AEA in approving a petition calling for a vote on the merger of Hedrick and the Pekin School Districts. *Hedrick*, 433 N.W.2d at 750. Among other things, the plaintiff claimed that the AEA failed to include

alternate plans in its reorganization plan and failed to review the matter on its merits after a hearing. *Id.*

Before considering the merits in *Hedrick,* we reviewed the proper framework for evaluating school district reorganization decisions. We noted that because reorganization is a legislative rather than a judicial function, our review was limited to review for substantial compliance that did not include reevaluation of the wisdom of the judgment of the AEA. *Id.* at 750–51. We further observed that judicial interference in local legislative matters would occur only when the agency had exceeded its jurisdiction or taken an action that is arbitrary, unreasonable, or unsupported by substantial evidence in the record. *Id.* The *Hedrick* court emphasized that all inferences in favor of the legality of the official steps would be observed. *Id.*

With respect to the plaintiff's challenge to the adequacy of the AEA plan that did not specifically propose or contemplate reorganization of school districts with enrollments over three hundred students, we held in *Hedrick* that the statute imposed no such requirement. We emphasized that the legislature did not mandate reorganizations, but only encouraged them. *Id.* at 751. We held that an AEA plan that contained no specific plans to propose mergers for school districts with enrollments greater than three hundred students, but did consider reorganization of school districts with less than three hundred students, was legally sufficient under Iowa Code chapter 275. *Id.* at 752–53.

The plaintiff in *Hedrick* also claimed that the AEA board did not consider the matter on the merits as required by Iowa Code section 275.15 (1985). *Id.* Apparently, the board took only six minutes to approve the reorganization petition. *Id.* at 753. We rejected the claim. *Id.* We noted that the AEA board had been considering reorganization

possibilities for several months prior to the day that the petitions were actually approved. *Id.* Further, we noted that the AEA board had given tentative approval to the alternate plan that recommended the merger of Hedrick and Pekin. *Id.* As a result, we found substantial compliance with the statutory requirements. *Id.*

Finally, in *Armstrong-Ringsted Community School District v. Lakeland Area Education Agency*, 597 N.W.2d 776 (Iowa 1999), we considered a case in a much different posture. In *Armstrong-Ringsted*, residents of a school district challenged the dismissal of a petition seeking to combine school districts. *Armstrong-Ringsted*, 597 N.W.2d at 776–77. During the pendency of the proposed merger of Lincoln Central and Armstrong-Ringsted, another petition was filed, this one proposing a merger of Lincoln Central and the Estherville School Districts. *Id.* at 777. The Lakeland AEA declined to approve the first petition and sent the second petition to the voters, which was approved. *Id.* Citing *Hedrick*, we emphasized that reorganization is a legislative, not a judicial process, and that our review was limited to determining whether the AEA "exceeded its jurisdiction or has taken an action that is arbitrary, unreasonable or unsupported by substantial evidence in the record." *Id.* at 777–78 (citation and internal quotation marks omitted).

**D. Application of Law to Facts.**

1. *Requirement of plan that specifically includes merger between Preston and East Central.* We begin by considering East Central's first contention, namely, that the MBAEA failed to meet its statutory mandate because its Plan did not specifically describe a merger between Preston and East Central.

We begin our analysis by noting that there is no provision in Iowa Code chapter 275 that requires an AEA to develop a specific plan of

mergers for all school districts within its geographic area. Indeed, such a task would be virtually impossible in an area with twenty-two school districts and literally hundreds of potential combinations. Instead, Iowa Code section 275.1 simply requires the AEA board to

> develop detailed studies and surveys of the school districts within the area education agency . . . for the purpose of providing for reorganization of school districts in order to effect more economical operation and the attainment of higher standards of education in the schools.

Iowa Code § 275.1(3) (2011). Iowa Code section 275.2 states that an AEA board plan shall "include suggested alternate plans that incorporate the school districts in the area education agency into reorganized districts" only with respect to school districts that meet the less than three-hundred pupil enrollment standard contained in Iowa Code section 275.3. *Id.* § 275.2. By requiring that the AEA prepare plans for merger of school districts with less than three hundred pupils, the implication is that plans need not be developed for school districts that do not meet that threshold. *Meinders v. Dunkerton Cmty. Sch. Dist.*, 645 N.W.2d 632, 637 (Iowa 2002) (express inclusion of specific requirement implies exclusion of others not mentioned).

In evaluating the claim raised in this case, it is important to recognize that the AEA board has no power to take the initiative and direct school districts to reorganize. It cannot, acting on its own, submit reorganization to the voters. Instead, the AEA board acts as a resource for school officials and citizens who are interested in potential reorganization. When local citizens propose such school reorganization, the AEA board then serves as a gatekeeper to ensure that the proposed merger meets applicable legal requirements and establishes the appropriate boundaries for the school districts subject to the potential merger.

In this case, the Plan and the testimony of Dr. Pelecky revealed that the criteria applied by the Board for evaluating compliance with the Plan were twofold. First, there needed to be sufficient public support for the reorganization as reflected in the filing of a valid petition to reorganize the school districts. Second, the resulting district must have at least three hundred enrolled students.

The implication of the Plan was that the MBAEA would not lead the way by proposing specific school reorganizations with respect to school districts with enrollment over three hundred students, but would instead defer to citizens to initiate such a school reorganization through the petition process. The MBAEA would review a petition, but not shape public dialogue in advance through its planning process for school districts over three hundred enrolled students other than by providing studies and surveys.

We do not consider the wisdom of the MBAEA's approach, but only its legal sufficiency. In *Bloom*, we approved a plan that did not have specific proposals for reorganization. *Bloom*, 270 N.W.2d at 597. While the statute now requires alternative reorganization plans for school districts that fall below the threshold of three hundred enrolled students, there is no similar requirement with respect to school districts with over three hundred enrolled students. *See Hedrick*, 433 N.W.2d at 752 ("[T]he 1984 change in the law . . . mandates the development of alternate plans for the reorganization of school districts with less than 300 students."). Consistent with *Bloom* and the language of *Hedrick*, we hold that there is no legal requirement that the MBAEA Board's plan contain a specific proposal for the merger of school districts with more than three hundred enrolled students prior to approval of a petition submitted by the voters.

2. *Alleged failure to make specific determination of compliance with plan.* We next consider the assertion of East Central that the MBAEA

acted improperly by approving the submission of the merger proposed in the citizen petition because the MBAEA did not make a specific finding that the petition was in accordance with the MBAEA Plan as required by Iowa Code section 275.5.

We again agree with the MBAEA. When an AEA considers whether to place a proposed merger on the ballot for voters to consider, it is acting in a legislative capacity, not a judicial capacity. *See Hedrick*, 433 N.W.2d at 750. Substantial compliance is the standard used to measure the conformance of actions taken by the AEA to approve a merger with applicable legal requirements. *Id.* at 750. When an AEA board acting in its legislative capacity determined to "grant the approval for moving ahead with the community vote," inherent in that action is a finding that all statutory prerequisites have been met. *See Hedrick*, 433 N.W.2d at 752; *Audubon Cnty.*, 196 N.W.2d at 428. While it might have been more transparent if the MBAEA Board held public discussion and voted on the predicate issues necessary to approve submission of a proposed merger to the voters, we do not believe the failure to do so requires invalidation of the action of the Board.

## IV. Conclusion.

For the above reasons, we conclude that the MBAEA was not required to develop a specific plan of merger between the Preston and East Central School Districts prior to approval of submission of a citizen petition to the voters of the districts. We further conclude that by approving the submission of the issue to the voters, the Board made an implied finding that all the statutory requisites were met. As a result, the decision of the district court in this matter is affirmed.

**AFFIRMED.**

All justices concur except Waterman, J., who takes no part.