# In the Iowa Supreme Court

No. 24–1704

Submitted October 8, 2025—Filed May 22, 2026

**Teresa Marie Rarick** and **Richard Dee Rarick,**

Appellants,

vs.

**Wesley Smidt** and **Des Moines Orthopaedic Surgeons, P.C.,**

Appellees.

Appeal from the Iowa District Court for Polk County, Coleman J. McAllister, judge.

Medical malpractice plaintiffs appeal the dismissal of their suit under Iowa Code section 147.140. **Affirmed.**

May, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman and McDonald, JJ., joined. Waterman, J., filed a concurring opinion, in which Christensen, C.J., joined. Mansfield, J., filed a dissenting opinion. McDermott, J., filed a dissenting opinion, in which Oxley, J., joined.

Scott M. Wadding of Sease & Wadding, Des Moines, for appellants.

Jack Hilmes, Erik P. Bergeland, and Joseph F. Moser of Finley Law Firm, P.C., Des Moines, for appellees.

**May, Justice.**

Iowa Code section 147.140(1)(*a*) (2023) requires a medical malpractice plaintiff to serve a certificate of merit "affidavit" within sixty days after the defendant answers. We have interpreted this affidavit requirement on several occasions, including our recent opinions in *Miller v. Catholic Health Initiatives-Iowa, Corp.*, 7 N.W.3d 367, 370 (Iowa 2024), and *Banwart v. Neurosurgery of North Iowa, P.C.*, 18 N.W.3d 267, 270 (Iowa 2025). Under those precedents, substantial compliance with the affidavit requirement requires either (1) a true "affidavit," meaning a written declaration under oath that is made in the presence of "any person authorized to administer oaths," Iowa Code section 622.85; or (2) a written statement that includes the phrase "penalty of perjury" as required by our affidavit-substitute statute, Iowa Code section 622.1. *See Miller*, 7 N.W.3d at 375; *Banwart*, 18 N.W.3d at 273.

In this medical malpractice case, the plaintiffs timely served a certificate of merit. But this certificate was not a true affidavit, and it did not include the phrase "penalty of perjury." So the certificate did not substantially comply with section 147.140's "affidavit" requirement. And so the district court was correct to grant the defendants' motion to dismiss. We affirm.

### I. Background Facts and Procedure.

**A. This Suit.** In March 2022, Richard Rarick was injured during knee surgery. In January 2023, Richard and his wife (collectively Rarick) brought this medical malpractice suit against the surgeon, Dr. Wesley Smidt, and the clinic where the surgeon practiced, Des Moines Orthopaedic Surgeons, P.C. (collectively DMOS).

**B. The 2023 Certificate.** DMOS filed its answer on March 14. The same day, Rarick served a document entitled "Certificate of Merit Affidavit." This

document, which we refer to as the "2023 certificate," began with a standard Iowa lawsuit caption. Beneath the caption, there appeared the phrases "STATE OF ARIZONA" and "COUNTY OF PIMA." Then the certificate stated: "The undersigned, being first duly sworn on oath, deposes and states as follows: . . . ." Next came the certificate's main text. This text included a summary of the qualifications and opinions of Dr. Gerlinger, Rarick's medical malpractice expert. It also incorporated Dr. Gerlinger's report by reference. The certificate ended with Dr. Gerlinger's undated signature:

The above information is true and correct to the best of my knowledge and belief.

_Tad L. Gerlinger, M.D._

As this reproduction shows, Dr. Gerlinger's signature was not accompanied by any notary stamp or jurat, that is, "[a] certification added to an affidavit . . . stating when and before what authority the affidavit . . . was made." *Jurat, Black's Law Dictionary* 1013 (12th ed. 2024). Nor did the certificate include the phrase "penalty of perjury," as is required to satisfy our affidavit-substitute statute, Iowa Code section 622.1.

**C. The 2024 Affidavits.** For much of 2023 and 2024, the parties engaged in discovery. Then in June 2024, Rarick filed and served an "amended" certificate of merit affidavit, which we refer to as the "2024 COM affidavit."

The contents of the 2024 COM affidavit were largely the same as the 2023 certificate. One difference was that the 2024 COM affidavit lacked any reference to Pima County, Arizona. Instead, the 2024 COM affidavit referred to the "STATE OF ILLINOIS" and "COUNTY OF DUPAGE."

The more notable difference was that the 2024 COM affidavit was a true affidavit. It was executed before an Illinois notary public. It bore proof of this fact in the form of a notary stamp and jurat. Here is the notarized signature from the 2024 COM affidavit:

The above information is true and correct to the best of my knowledge and belief.

Tad L. Gerlinger, M.D.

Subscribed and sworn to before me this 13th day of June, 2024.

Notary Public

Notary Public State of Illinois
Official Seal
Nilda D Garay
Comm. # 977251
My Commission Expires 8/27/2027

Also in June, Rarick served and filed another affidavit, which was also signed by Dr. Gerlinger. In this separate affidavit, Dr. Gerlinger explained that he had signed the undated 2023 certificate on or about February 11, 2023. Dr. Gerlinger also explained some of the beliefs and understandings that he held at that time. For instance, Dr. Gerlinger said that he had "firmly believed and understood that [he] was under oath." He also said that he had "firmly believed and understood that the information" in the certificate "was true under the penalty of perjury under the laws of the State of Iowa."

**D. DMOS's Motion.** Later that month, DMOS filed a motion to dismiss under Iowa Code section 147.140(6). DMOS pointed to our interpretations of section 147.140 in *Miller*, 7 N.W.3d at 375, and *Shontz v. Mercy Medical Center-Clinton, Inc.*, No. 23–0719, 2024 WL 2868931, at *1 (Iowa June 7, 2024) (per curiam) (unpublished). Under these interpretations, DMOS argued, Rarick's 2023 certificate did not satisfy section 147.140's affidavit requirement because

(1) it was not a true "affidavit," which requires the presence of an officer who is authorized to place the affiant under oath; and (2) it was not a statement under "penalty of perjury." DMOS also argued that Rarick's violation of section 147.140 could not be cured by the 2024 COM affidavit because it was served long after the statute's sixty-day deadline.

**E. Rarick's Resistance.** Rarick's resistance raised a number of legal arguments, some of which are raised again in this appeal. They are discussed below.

Rarick also provided additional evidence concerning the 2023 certificate. For instance, Rarick submitted a declaration signed under penalty of perjury by Dr. Gerlinger. In it, Dr. Gerlinger further explained the formation of the 2023 certificate, including his belief that he had "sw[orn] under oath and under penalty of perjury" that its contents were "true."

Rarick also provided a declaration signed under penalty of perjury by Rarick's attorney, Scott Wadding. Wadding's declaration provided additional details about the formation of the 2023 certificate. For instance, Wadding reported that he was a notary public in 2023, that he had told Dr. Gerlinger via email and telephone that the 2023 certificate would be used to support the lawsuit, and that Dr. Gerlinger had sent the 2023 certificate to Wadding "by email."

**F. The District Court Ruling.** The district court agreed with DMOS that the 2023 certificate did not substantially comply with section 147.140's affidavit requirement. The district court also concluded that the 2024 COM affidavit, which was filed "four hundred fifty-seven days after DMOS's answer was filed," did not comply with section 147.140's deadlines. Therefore, the district court dismissed Rarick's suit. Rarick now appeals from that ruling.

**G. This Appeal.** Regular appellate briefing started in late 2024 and ended in early 2025. Rarick raised three main claims of error: (1) DMOS waived any complaints about the 2023 certificate through its delays and participation in discovery, (2) Rarick substantially complied with section 147.140, and (3) dismissal under section 147.140 violated the Iowa Constitution.

After the parties' appellate briefing was completed, we issued our opinion in *Banwart*, 18 N.W.3d at 269. In *Banwart*, we reaffirmed *Miller*'s and *Shontz*'s interpretation of section 147.140's affidavit requirement. *Id.* at 272. We also concluded that the *Banwart* defendants had not forfeited their rights under section 147.140 by engaging in discovery for over two years before moving to dismiss. *Id.* at 276.

Rarick requested an opportunity for additional briefing in light of *Banwart*. We granted that request by allowing both sides to file supplemental briefs. We then submitted the case without oral argument.

**II. Merits.**

**A. Statutory Overview.** As explained, Iowa Code section 147.140(1)(*a*) requires a medical malpractice plaintiff to serve a certificate of merit "affidavit" within sixty days of the defendant's answer. We have noted that the word "affidavit" is used six times in section 147.140 and must be taken seriously. *Miller*, 7 N.W.3d at 373. So we have applied the legislature's own definition of "affidavit" from Iowa Code section 622.85. Under that definition, "[a]n affidavit is a written declaration made under oath, without notice to the adverse party, *before any person authorized to administer oaths within or without the state.*" *Id.* (emphasis added).

Under this statutory definition, an affidavit requires two different people who are together at the same time. It requires the affiant, who provides his or

her "written declaration under oath," and it also requires the officer "authorized to administer oaths," "before" whom the declaration is made. *Id.* So, as we explained in *Miller*, "[I]n order to make an affidavit, there must be present at the same time the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath." 7 N.W.3d at 374–75 (alteration in original) (quoting *Tunia v. St. Francis Hosp.*, 832 A.2d 936, 939 (N.J. Super. Ct. App. Div. 2003)). Likewise, as we said in *Banwart*, the formation of an affidavit requires the presence of a "person authorized to administer the oath," such as a "notary (or other authorized person)," who attaches a jurat "to prove the oath was administered." 18 N.W.3d at 273 & n.3 (third quoting *Miller v. Palo Alto Bd. of Supervisors*, 84 N.W.2d 38, 40 (Iowa 1957)). Conversely, a lone person cannot put themselves under oath and create a true affidavit. *In re Est. of Hoyt*, 67 N.W.2d 528, 532 (Iowa 1954) (holding that a document did not qualify as an affidavit where there was "no showing it was made before any person authorized to take or administer oaths"); *see State v. Carter*, 618 N.W.2d 374, 377 (Iowa 2000) (en banc) ("We conclude our legislature intended the 'oath or affirmation' element of perjury under section 720.2 to be accomplished in the presence of an authorized official."); *see also* Iowa Code § 9B.6(1) ("[T]he individual making the statement or executing the signature shall appear personally before the notarial officer."); 2A C.J.S. *Affidavits* § 25, at 266 (2023) ("In order for a declaration to be considered an 'affidavit,' the declaration must be sworn in the presence of [an authorized officer].").

We have recognized, though, that section 147.140 requires only "substantial compliance." *Banwart*, 18 N.W.3d at 275; *see* Iowa Code § 147.140(6). We have also recognized that through Iowa Code section 622.1, the legislature has provided a special procedure by which an affidavit-substitute can

be produced without the presence of an authorized officer. *See Carter*, 618 N.W.2d at 377–78. And so we have said that when a statement complies with section 622.1, that statement provides "substantial compliance" with section 147.140's affidavit requirement. *Banwart*, 18 N.W.3d at 273–75.

We have also made it clear, however, that the specific language required by section 622.1—"under penalty of perjury"—is essential. *See Carter*, 618 N.W.2d at 377. As we said in *Miller*, and then again in *Banwart*, "[t]he 'under penalty of perjury' language must be included." *Miller*, 7 N.W.3d at 375; *Banwart*, 18 N.W.3d at 273.

All told, then, there are two ways for a plaintiff to substantially comply with section 147.140's affidavit requirement. The plaintiff must either provide (1) an actual "affidavit" executed by an expert before a separate person who is "authorized to administer the oath," or (2) "the permissible substitute," namely, a document compliant with section 622.1, which "requires the statement that the person is signing under 'penalty of perjury.'" *Banwart*, 18 N.W.3d at 273 n.3. As we said in *Banwart*, if a true affidavit is not supplied, "[t]he omission of that" penalty-of-perjury "language is fatal." *Id.*

By "fatal," we mean that a plaintiff's failure to provide the required affidavit—or "the permissible substitute"—prior to the sixty-day deadline "shall result, upon motion, in dismissal with prejudice of each cause of action as to which expert witness testimony is necessary to establish a prima facie case." Iowa Code § 147.140(6). Importantly, though, in paragraph (4), section 147.140 provides two pathways through which a plaintiff's compliance window can be expanded. *See id.* § 147.140(4). On the one hand, paragraph (4) permits "[t]he parties" to extend the sixty-day deadline "by agreement." *Id.* On the other hand, paragraph (4) permits "the court" to order an extension of the deadline *if* two

criteria are met. *Id.* First, there must be "good cause shown." *Id.* Second, the court's order must come "in response to a motion filed prior to the expiration of the" deadline. *Id.*

If the requirements of paragraph (4) aren't met, though, a court may not extend the statutorily dictated sixty-day deadline. Likewise, if the paragraph (4) requirements aren't met, a plaintiff may not cure deficiencies by serving supplementary documents after the deadline has passed. For instance, in *Estate of Fahrmann v. ABCM Co.*, we held that a certificate filed "forty-two days after the [sixty-day] statutory deadline" was untimely because "the plaintiffs failed to move for an extension within the deadline, and the defendants never agreed to an extension" as paragraph (4) permits. 999 N.W.2d 283, 288 (Iowa 2023). Similarly, in *Miller*, a plaintiff served a "certificate of merit in the form of a report letter with the expert's unsworn [and, therefore, non-compliant] signature" prior to the sixty-day deadline. 7 N.W.3d at 370. Then, about three months after the deadline had passed, the plaintiff served a subsequent expert report that *was* "signed under penalty of perjury." *Id.* at 371. The plaintiff argued that this second effort cured their initial "violation of section 147.140." *Id.* at 377. We said this argument was foreclosed by *Fahrmann* because, as there, the *Miller* plaintiff had failed to comply with paragraph (4)'s requirements by filing a motion to extend "within the original sixty-day deadline" or "obtain[ing] an agreed-upon extension from the defendants." *Id.* "A contrary holding would undermine section 147.140 as well as untold other statutes and rules requiring timely sworn statements," we said. *Id.* at 370.

**B. Rarick's Claims of Error.** With this background in mind, we turn to Rarick's claims of error. We begin by observing that Rarick's briefing includes a wide range of arguments and subarguments. Some are in the main body of

Rarick's briefs, and some are in the footnotes. We have considered them all. For purposes of discussion, we group them under the three main headings used in Rarick's briefs: (1) the claim that DMOS waived any defects in the 2023 certificate, (2) the claim that Rarick substantially complied with section 147.140, and (3) the claim that dismissal under section 147.140 violated the Iowa Constitution. We address each in turn. We review statutory claims for errors at law, and we address constitutional claims de novo. *Banwart*, 18 N.W.3d at 272.

1. *Waiver-related arguments.* Rarick leads off with waiver arguments, although Rarick sometimes characterizes them in terms of estoppel, consent, laches, or the like. At their core, though, all of these arguments are based on the same complaints. In Rarick's view, DMOS could have—but did not—move to dismiss early in the case. Instead, DMOS engaged in litigation conduct—including extensive discovery—that was inconsistent with early dismissal. As a result of this discovery and delay, Rarick suffered prejudice, including wasted costs. And so, Rarick argues, we should find that DMOS abandoned any right to move for dismissal under section 147.140.

This argument is foreclosed by *Banwart*. In *Banwart*, the defendants waited "two and a half years after [the] lawsuit commenced"—and also engaged in "significant discovery"—before seeking dismissal under section 147.140 based on defects in the plaintiffs' certificate of merit. *Id.* at 276. We considered whether the defendants' delay and litigation conduct required a finding that the defendants had waived or were estopped from asserting challenges to the certificate of merit. *Id.* We concluded otherwise. *Id.* at 277–78. We held instead that "defendants may control the timing of their motions for summary judgment, *subject to the district court's dispositive motion deadline*, without wa[i]ving their rights under section 147.140." *Id.* at 278 (emphasis added).

Thus, *Banwart* imposes a "bright-line rule": If defendants seek dismissal by the dispositive motion deadline, their section 147.140 rights are preserved. And that is what happened here. It is undisputed that DMOS filed the motion to dismiss before the dispositive motion deadline. Therefore, following *Banwart*, we must reject Rarick's waiver-related arguments.

2. *Substantial compliance.* Rarick next argues that the district court erred by finding that Rarick failed to substantially comply with section 147.140. We disagree.

As explained, Iowa Code section 147.140(1)(*a*) requires the plaintiff to substantially comply with its affidavit requirement within sixty days after the defendant answers. Although the deadline can be extended through agreement of the parties or a pre-deadline motion, Rarick did not obtain an extension. *See id.* § 147.140(4). So we focus on the sixty-day period following DMOS's answer.

Because DMOS filed its answer on March 14, 2023, Rarick's sixty-day period for compliance ran from March 14 until May 15. *See id.* § 4.1(34) (computing time to exclude the first day but include the last day, and extending time to include the next day the office of the clerk is open to receive the filing if the last day would fall on a Saturday, Sunday, or holiday). Rarick's 2023 certificate was served during this period. And so the 2023 certificate was timely. The only question, then, is whether the 2023 certificate substantially complied with section 147.140's affidavit requirement.

Like the district court, we conclude it did not. As explained, under *Miller* and *Banwart*, a plaintiff can substantially comply with the affidavit requirement by serving either: (1) a true "affidavit" as defined by the legislature in section 622.85, or (2) a statement under "penalty of perjury" as permitted by the legislature in section 622.1. *Banwart*, 18 N.W.3d at 273; *Miller*, 7 N.W.3d at 375.

The 2023 certificate was neither. The 2023 certificate was not a true affidavit because it was not executed under oath in the presence of an authorized officer. Iowa Code § 622.85; *Miller*, 7 N.W.3d at 374–75 ("[I]n order to make an affidavit, there must be present at the same time the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath." (alteration in original) (quoting *Tunia*, 832 A.2d at 939)); *see also* Iowa Code § 9B.2(11)(*a*) (defining "*personal appearance*"—required in Iowa Code § 9B.6(1)—as "an act of a party to physically appear within the presence of a notarial officer at the time the notarial act is performed," except for remote notarization procedures outlined in Iowa Code § 9B.14A). Nor did the 2023 certificate include the essential phrase, "penalty of perjury." *Banwart*, 18 N.W.3d at 273; *Miller*, 7 N.W.3d at 375. Therefore, following our precedents in *Miller* and *Banwart*, we must conclude that Rarick's 2023 certificate did not substantially comply with section 147.140's affidavit requirement. The district court was right to dismiss on this basis.

We have considered all of Rarick's substantial-compliance arguments, both in the original briefing and supplemental briefing. These include Rarick's arguments that (1) any falsehoods in the 2023 certificate could have subjected Dr. Gerlinger to criminal liability under Iowa Code section 714.8 for fraudulent practices; (2) extrinsic evidence shows Dr. Gerlinger knew that if he had made false statements in the 2023 certificate, he would have been subject to professional discipline; (3) extrinsic evidence shows that Dr. Gerlinger had a reasonable subjective belief that he was under oath and subject to perjury when he signed the 2023 certificate; (4) extrinsic evidence shows that Dr. Gerlinger presented the 2023 certificate "by email" to Rarick's attorney, who was a notary public; (5) extrinsic evidence shows that Rarick's attorney told Dr. Gerlinger via

email and telephone that the 2023 certificate would be used to support this lawsuit; and (6) the 2023 certificate was self-titled as an "affidavit" and includes the following representation: "The undersigned, being first duly sworn on oath, deposes and states as follows: . . . ."

Even considering all of this, we still cannot conclude that the 2023 certificate substantially complied. Again, *Miller* and *Banwart* dictate that a certificate of merit affidavit must be either (1) a true "affidavit" that satisfies section 622.85, or (2) a statement under "penalty of perjury" that satisfies section 622.1. *Banwart,* 18 N.W.3d at 273; *Miller,* 7 N.W.3d at 375. We refuse to abandon those precedents. Applying those precedents here, the 2023 certificate cannot qualify. It cannot qualify because it does not include the required "penalty of perjury" language, and because it was not a true affidavit. *Banwart,* 18 N.W.3d at 273; *Miller,* 7 N.W.3d at 375.

Rarick's extrinsic evidence does not change our analysis or our conclusion. Again, a lone person cannot sign a document and thereby create a true affidavit. That's true no matter how the document is titled, what language it contains, what the person believes, or how reasonable their beliefs may be. Rather, a true affidavit must be executed in the presence of an authorized officer. *See* Iowa Code § 622.85; *Carter,* 618 N.W.2d at 377; *City of Cedar Rapids v. Atsinger,* 617 N.W.2d 272, 276 (Iowa 2000) (en banc); *cf.* Iowa Code § 9B.14A(2)–(3) (permitting the "personal appearance" requirement to be satisfied through a special procedure for the remote performance of notarized acts, which includes the "creat[ion] [of] an audio-visual recording of the performance of the notarial act"). And Rarick's evidence does not show that the 2023 certificate was executed in the presence of an authorized officer. Although Rarick's attorney was a notary public, the evidence does not show that Dr. Gerlinger signed the 2023 certificate

in the presence of Rarick's attorney. Rather, Dr. Gerlinger signed it on his own and then sent it "by email" to Rarick's attorney. So, even considering Rarick's evidence, the 2023 certificate still wasn't an affidavit.

Likewise, Rarick's evidence doesn't change the analysis or the outcome under section 622.1. Under the plain and binding text of section 622.1, a document's legal significance does not turn on the beliefs of its signer, the reasonableness of those beliefs, or any other circumstance mentioned in Rarick's evidence. *Cf.* Iowa Code § 622.1. Rather, under section 622.1, a document's legal significance turns on the written contents of the document itself. *Id.* Specifically, if a document is signed and dated, the sole question under section 622.1 is whether the document states that the signer is certifying the document's contents "to be true under penalty of perjury under the laws of this state." *Id.* If so, then the document satisfies section 622.1. If not, the document does not satisfy section 622.1. Therefore, because the 2023 certificate did not include the required "penalty of perjury" language, it did not satisfy section 622.1, and it did not satisfy section 147.140. *Banwart,* 18 N.W.3d at 273; *Miller,* 7 N.W.3d at 375.

In the alternative, Rarick proposes that section 147.140 could be satisfied by Dr. Gerlinger's 2024 COM affidavit. We disagree—although only because of its timing. After all, it is undisputed that the 2024 COM affidavit was a true affidavit. It was sworn and signed before an authorized officer, an Illinois notary public. Therefore, if the 2024 COM affidavit had been served within the sixty-day statutory time frame, Rarick would have complied with section 147.140.

But it wasn't served during that sixty-day window. Nor did Rarick obtain an extension of the deadline through the procedures allowed under paragraph (4). Therefore, the sixty-day deadline applied, and the 2024 COM affidavit was too late.

We have also considered Rarick's suggestion that the 2024 COM affidavit could "relate back" to the 2023 (non-affidavit) certificate. We are not convinced.

When "relation back" applies, it can allow a litigant to avoid a statutory deadline by treating "an act done at a later time . . . as though it occurred at an earlier time." *Relation Back*, *Black's Law Dictionary* 1544 (12th ed. 2024). As our court of appeals recently observed, though, Iowa's relation back doctrine "is generally applied only with reference to the statute of limitations." *Walker v. Daniels*, No. 23–0711, 2024 WL 2308699, at *4 (Iowa Ct. App. May 22, 2024) (quoting *Erickson v. Wright Welding Supply, Inc.*, 485 N.W.2d 82, 85 (Iowa 1992)). At least, we generally allow relation back only when it is expressly authorized by some legislatively established source of law, like a rule of procedure. *See State v. Thompson*, 954 N.W.2d 402, 414 (Iowa 2021) (noting that the legislature establishes procedural rules "indirectly through delegation of the rulemaking power to this court subject to legislative oversight and amendment"). For example, our courts have relied on Iowa Rule of Civil Procedure 1.402(5), which was promulgated under the authority granted by Iowa Code sections 602.4201 and 602.4202, and which expressly authorizes certain amended pleadings to "relate[] back" for statute of limitations purposes. *See, e.g.*, *Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 191 (Iowa 2013); *Reyes v. Int'l Van Lines, Inc.*, 9 N.W.3d 793, 801 (Iowa Ct. App. 2024); *cf. Erickson*, 485 N.W.2d at 85 (relying on rule 89—which was the predecessor of rule 1.402(5)—but finding amended petition did not relate back). Another example is our rules of electronic filing, whose promulgation was legislatively authorized in Iowa Code section 602.1614, and which we have read to "allow[] a corrected filing to relate back to the date of [a timely filed] original submission." *Jacobs v. Iowa Dep't of Transp.*, 887 N.W.2d 590, 599 (Iowa 2016); *see also Toney v. Parker*, 958 N.W.2d

202, 209 (Iowa 2021) (discussing the rules of electronic filing and applying the *Jacobs* relation-back framework).

In both situations, relation back is properly tied to textual authorization. But there is no textual authorization here.[1] No procedural rule authorizes relation back here. And although several *other* Iowa statutes expressly authorize relation back in *other* situations,[2] section 147.140 does not authorize it. So we must give effect to section 147.140's timing requirements as they are written. Under those requirements, the 2024 COM affidavit was not timely, and it cannot cure deficiencies in the 2023 certificate.

3. *Iowa Constitution.* Finally, we have considered Rarick's equal protection and due process claims under article I, sections 1, 6, and 9 and article III, section 30 of the Iowa Constitution. Rarick complains that section 147.140 affords special advantages to medical malpractice defendants (but not other civil defendants), imposes unfair burdens on medical malpractice plaintiffs (but not other civil plaintiffs), and uses overly technical means that can lead to the dismissal of meritorious suits. As DMOS points out, though, Rarick's complaints are not materially different from challenges that have been raised against Iowa Code section 668.11, which also imposes special expert-disclosure burdens on some (but not all) civil plaintiffs, namely, plaintiffs who sue licensed professionals. This, in turn, provides special advantages to a limited class of defendants—a class that includes many medical malpractice defendants, such as the surgeon-defendant here. And violations of section 668.11 can lead to the

---

[1]We recognize that special principles can apply to the amendment of true affidavits. *See Hallett v. Chi. & N.W. Ry.*, 22 Iowa 259, 260–61 (1867). As explained, though, the 2023 certificate is not an affidavit.

[2]*See, e.g.*, Iowa Code § 488.810(3) ("relates back"); *id.* § 489.706(3) (same); *id.* §§ 490.1404(5), .1422(3) (same); *id.* § 499.78(3) (same); *id.* §§ 501.804(5), .813(3) (same); *id.* §§ 504.1404(5), .1423(3) (same); *id.* § 554.9601(5) (same); *id.* § 685.4(3) ("relate back").

dismissal of medical malpractice suits—including suits that would otherwise have merit. Despite all of this, we have repeatedly rejected equal protection and due process challenges to section 668.11. *See Kennis v. Mercy Hosp. Med. Ctr.*, 491 N.W.2d 161, 167 (Iowa 1992); *Thomas v. Fellows*, 456 N.W.2d 170, 173 (Iowa 1990) ("[T]he problems surrounding medical liability, liability insurance, and the attendant availability and cost of medical services to the public are, at least arguably, rational reasons for the enactment of the expert witness designation requirements of section 668.11."). We believe that the same outcome is appropriate here.

**III. Conclusion.**

The district court was correct to grant DMOS's motion to dismiss. We affirm.

**Affirmed.**

Christensen, C.J., and Waterman and McDonald, JJ., join this opinion. Waterman, J., files a concurring opinion, in which Christensen, C.J., joins. Mansfield, J., files a dissenting opinion. McDermott, J., files a dissenting opinion, in which Oxley, J., joins.

**Waterman, Justice (concurring).**

I join the well-reasoned majority opinion in full. I write separately to emphasize several additional grounds for rejecting a relation-back or an aliunde-evidence theory that would allow untimely curative affidavits.

**I. The Iowa Legislature Chose to Disallow Untimely Curative Affidavits of Merit Under Section 147.140.**

The Iowa Legislature considered but ultimately decided to omit language that would have expressly allowed parties to cure deficiencies in the original certificate of merit after the statutory sixty-day deadline. Such language was initially included in all three draft bills of the legislation ultimately enacted and codified as section 147.140. *See* H.S.B. 105, 87th G.A., 1st Sess. § 5(3), (5)(*b*) (Iowa 2017); S.S.B. 1087, 87th G.A., 1st Sess. § 5(3), (5)(*b*) (Iowa 2017); H.F. 487, 87th G.A., 1st Sess., § 3(3), (5)(*b*) (Iowa 2017).[3] But the legislature dropped that language from its final enactment. 2017 Iowa Acts ch. 107, § 4 (codified at Iowa Code § 147.140 (2018)). Today our court honors the legislature's policy choice and declines to effectively amend section 147.140 to add language that the elected branches chose to omit.

---

[3]The original draft bills included this cure provision:

> *b.* A written notice of deficiency may be served upon the plaintiff for failure to comply with subsection 1 because of deficiencies in the certificate of merit affidavit or answers to interrogatories. The notice shall state with particularity each deficiency of the affidavit or answers to interrogatories. The plaintiff shall have twenty days to cure the deficiency. Failure to comply within the twenty days shall result, upon motion, in mandatory dismissal with prejudice of each action as to which expert witness testimony is necessary to establish a prima facie case. A party resisting a motion for mandatory dismissal pursuant to this section shall have the right to request a hearing on the motion.

H.S.B. 105, 87th G.A., 1st Sess. § 5(3), (5)(*b*) (Iowa 2017); S.S.B. 1087, 87th G.A., 1st Sess. § 5(3), (5)(*b*) (Iowa 2017); H.F. 487, 87th G.A., 1st Sess., § 3(3), (5)(*b*) (Iowa 2017).

Our role is not to sit as a superlegislative body making different policy choices for medical malpractice actions. *See Fairfield v. WakeMed*, 821 S.E.2d 277, 281 (N.C. Ct. App. 2018) ("When a court, in effect, constitutes itself a superlegislative body, and attempts to rewrite the law according to its predilections and notions of enlightened legislation, it destroys the separation of powers and thereby upsets the delicate system of checks and balances which has heretofore formed the keystone of our constitutional government." (quoting *State v. Cobb*, 136 S.E.2d 674, 677 (N.C. 1964))). The majority correctly follows our precedent to uphold the legislature's "conscious policy decision" to omit a cure provision from the final signed bill codified in section 147.140. *Est. of Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, 841 (Iowa 2023). This is not the first time we have relied on the deletion of a provision from a prior draft to interpret this statute. *See id.* (holding that a certificate-of-merit affidavit need not address causation because draft language to that effect was omitted from the final enactment, which made us "confident that our legislature made a conscious policy decision, not merely a mistake, when it removed the word 'causation' from section 147.140(1)(*a*)").

The Iowa Legislature's intentional omission of relation-back or cure language is dispositive. Iowa joined twenty-eight other states with certificate-of-merit requirements when it enacted Iowa Code section 147.140 in 2017. *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 541–42 (Iowa 2022). Many of the other state certificate-of-merit statutes expressly allow untimely certificates of merit to relate back and cure defects in timely but noncompliant certificates.[4] The Iowa statute does not. *Cf.* Iowa Code § 147.140 (2023). If the

---

[4]*See, e.g.*, Ariz. Rev. Stat. § 12-2603(F) (2024) ("Upon any allegation of insufficiency of the affidavit, the court shall allow any party a reasonable time to cure any affidavit, if necessary." (emphasis added)); Ga. Code Ann. § 9-11-9.1(e) (2024) ("If a plaintiff files an affidavit which is

Iowa Legislature wanted to allow belated cures or relation back, it would have enacted language to that effect.

The majority opinion respects the Iowa Legislature's conscious rejection of the relation-back doctrine for this enactment. In so doing, the majority honors the separation of powers and enforces section 147.140's sixty-day deadline.

**II. Our Precedent Requires Affirmance Under Principles of Stare Decisis.**

Iowa district courts and the court of appeals have correctly applied *Banwart v. Neurosurgery of North Iowa, P.C.*, 18 N.W.3d 267 (Iowa 2025), and the

---

allegedly defective, and the defendant to whom it pertains alleges . . . that said affidavit is defective, the plaintiff's complaint shall be subject to dismissal for failure to state a claim, except that the plaintiff may cure the alleged defect by amendment pursuant to Code Section 9-11-15 within 30 days of service of the motion alleging that the affidavit is defective. The trial court may . . . extend the time for filing said amendment or response to the motion, or both, as it shall determine justice requires."); Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(b)(1)(ii) (West 2024) ("[T]he court shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if" the statutory limitations period has expired and the plaintiff's failure "was neither willful nor the result of gross negligence."); Mich. Ct. R. 2.118(D) ("In a medical malpractice action, an amendment of an affidavit of merit or affidavit of meritorious defense relates back to the date of the original filing of the affidavit."); Ohio R. Civ. 10(D)(2)(e) ("[If an] affidavit of merit is determined by the court to be defective . . ., the court shall grant the plaintiff a reasonable time, not to exceed sixty days, to file an affidavit of merit intended to cure the defect"); Pa. R. Civ. P. 1042.8 ("If a court grants a motion to strike a claim for noncompliance with the [certificate-of-merit requirement], the court shall grant the plaintiff twenty days to file a certificate of merit which cures the defect."); Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (West 2023) ("If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency."); *see also Cato v. Attar*, 569 N.E.2d 1111, 1113 (Ill. App. Ct. 1991) ("While section 2–622 [requiring affidavit and expert report] allows the court to dismiss a complaint for failure to comply with its mandates, it does not require dismissal *with prejudice*. A party who fails to comply with section 2–622 may be granted leave to amend its pleadings to cure the defect, or the court may dismiss the complaint with or without prejudice. The determination of whether to allow amendment or to dismiss depends on the facts and circumstances of each case." (citation omitted)); *Pfeiffer v. Allina Health Sys.*, 851 N.W.2d 626, 634 (Minn. Ct. App. 2014) ("The expert review statute provides plaintiff with 45 days after a defendant moves for dismissal to correct alleged deficiencies in an expert disclosure affidavit. This safe-harbor provision was added to correct a perception that 'meritorious medical malpractice claims were being dismissed where the expert disclosure affidavit was only missing some technical information that could be corrected.'" (quoting *Wesely v. Flor*, 806 N.W.2d 36, 40 (Minn. 2011)) (citing Minn. Stat. § 145.682(6)(c))). The Iowa legislature chose not to include such provisions in Iowa Code section 147.140. I would not rewrite the Iowa statute to effectively add such language in the guise of interpretation.

plain language of section 147.140 in numerous cases.[5] "*Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). Like cases should be treated alike, and our court should not repeatedly relitigate the same issues. The majority correctly applies *Banwart* to determine that Rarick's original certificate of merit failed to substantially comply with section 147.140 because it lacked a jurat or penalty of perjury language.

We have repeatedly recognized that binding the conscience of the expert through the oath—by affidavit or penalty of perjury language—is essential to the statute's reasonable objectives and therefore necessary for substantial compliance. *See Banwart*, 18 N.W.3d at 275; *Miller v. Cath. Health Initiatives-Iowa Corp.*, 7 N.W.3d 367, 376 (Iowa 2024); *cf. Est. of Fahrmann v. ABCM Corp.*, 999 N.W.2d 283, 287–88 (Iowa 2023). "The Iowa legislature made the policy choice to deter false expert testimony in medical malpractice actions by requiring the expert to sign the certificate of merit under oath or under penalty of perjury." *Banwart*, 18 N.W.3d at 275. "This requirement can help weed out weak cases

---

[5]*See, e.g.*, *Frank v. Hallman*, No. 24–0998, 2025 WL 2537920, at *1 (Iowa Ct. App. Sep. 4, 2025) (applying *Banwart* to affirm dismissal), *appl. for further rev. filed*, No. 24–0998 (Iowa Sep. 24, 2025); *McGonigle v. Finley Hosp.*, No. 24–1349, 2025 WL 2538778, at *1 (Iowa Ct. App. Sep. 4, 2025) (same), *appl. for further rev. filed*, No. 24–1394 (Iowa Sep. 23, 2025); *Est. of Spieker v. Cath. Health Initiatives – Iowa, Corp.*, No. 24–1599, 2025 WL 2925143, at *2–3 (Iowa Ct. App. Oct. 15, 2025) (same), *appl. for further rev. filed*, No. 24–1599 (Iowa Nov. 3, 2025); *Panek v. Iowa Methodist Med. Ctr.*, No. 24–1838, 2025 WL 3023008, at *2 (Iowa Ct. App. Oct. 29, 2025) (same), *appl. for further rev. filed*, No. 24–1838 (Iowa Nov. 18, 2025); *Est. of Schmidt v. Buena Vista Reg'l Med. Ctr.*, No. 24–1840, 2026 WL 43831, at *2–3 (Iowa Ct. App. Jan. 7, 2026) (applying *Banwart* to reverse district court ruling that had denied the defendants' dispositive motion), *appl. for further rev. filed*, No. 24–0998 (Iowa Sep. 24, 2025); *Carder v. Active Chiropractic, P.C.*, No. 25–0308, 2026 WL 892564, at *2–3 (Iowa Ct. App. Apr. 1, 2026) (same), *appl. for further rev. filed*, No. 24–1840 (Iowa Jan. 27, 2026); *Combs v. Jennie Edmundson Mem'l Hosp.*, No. 24–1570, 2026 WL 1155680, at *2–3 (Iowa Ct. App. Apr. 29, 2026) (applying *Banwart* to affirm dismissal). Resisted applications for further review are pending in the first six cases.

early when experts are deterred by the risk of criminal penalties for perjury and decline to sign the requisite certificate under oath." *Id.* (quoting *Miller*, 7 N.W.3d at 376).

Substantial compliance with Iowa Code section 147.140's oath requirement is easy to accomplish: if a notary isn't present when the expert signs, simply adding "under penalty of perjury" to the certificate's signature line suffices. *See* Iowa Code § 147.140(1)(*b*); *id.* § 622.1(1). Our cases confirm what the statutory text requires: "counsel must ensure that a timely certificate of merit is signed by the expert under oath or under penalty of perjury." *Banwart*, 18 N.W.3d at 274. "A contrary holding would undermine many Iowa statutes requiring sworn statements or verifications." *Id.* (quoting *Miller*, 7 N.W.3d at 375).

Indeed, federal courts applying the federal counterpart to Iowa Code § 622.1—28 U.S.C. § 1746[6]—"uniformly hold that to substantially comply with § 1746, 'the declaration must be made under penalty of perjury and must be attested to be true.' " *Apple Hill Growers v. El Dorado Orchards, Inc.*, No. 2:17-cv-

---

[6]28 U.S.C. § 1746 provides:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

(Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

02085-TLN-CKD, 2022 WL 1506205, at *13 (E.D. Cal. May 12, 2022) (quoting *Weldon v. Anaya*, No. 1:15-cv-00856-DAD-MJS, 2017 WL 1349005, at *2 (E.D. Cal. Apr. 6, 2017)) (collecting cases). As the United States Court of Appeals for the Second Circuit recognized, "Inclusion of the language 'under penalty of perjury' is an integral requirement of the statute for the very reason that it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements." *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (per curiam). In holding that the "penalty of perjury" language is required under the statute, the Second Circuit aptly observed that "[a]ny other result would be contrary to the plain language of the statute and the objective sought to be advanced by it." *Id.* The court added that "omission of the phrase 'under penalty of perjury' would 'allow[] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods.' " *Id.* (alteration in original) (quoting *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (per curiam)). These persuasive federal cases further support our court's determination that a certificate of merit lacking the "penalty of perjury" language does not substantially comply with section 147.140.

Nor does a compliant but untimely affidavit save the day. Our court, in two *unanimous* opinions, squarely rejected claims that a subsequent, untimely affidavit can substantially comply with section 147.140. *Miller*, 7 N.W.3d at 377; *Est. of Fahrmann*, 999 N.W.2d at 287–88. "Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law." *Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015). Our

court today correctly follows that precedent. A contrary holding would undermine the statute's sixty-day deadline.[7]

The chorus of complaints that dismissal with prejudice under section 147.140(6) is too harsh a remedy should be directed to the legislature, not courts that simply apply the statute's plain language. *See WakeMed*, 821 S.E.2d at 281–82 ("We are not unmindful of the harsh outcomes that can result from the application of [the statute]. However, based on the clear language employed by the General Assembly and [caselaw], we must interpret [the statute] as it is written. Any modification . . . must come from the legislative branch rather than the judicial branch.").

With these additional reasons, I join the majority opinion in full.

Christensen, C.J., joins this concurrence.

---

[7]That deadline can be extended by agreement of the parties or by the court for good cause and on motion filed within the sixty-day period. Iowa Code § 147.140(4). Neither provision saves the untimely second certificate in this case.

**Mansfield, Justice (dissenting).**

I joined the court's opinions in *Miller v. Catholic Health Initiatives-Iowa, Corp.*, 7 N.W.3d 367 (Iowa 2024), and *Banwart v. Neurosurgery of North Iowa, P.C.*, 18 N.W.3d 267 (Iowa 2025). I continue to believe that they were correctly decided on their facts. But I have now concluded that their language and their reach are too broad. Therefore, I dissent from the court's application of *Miller* and *Banwart* to the present case. I would hold that the plaintiffs substantially complied with the certificate of merit affidavit requirement of Iowa Code section 147.140 (2023).

The plaintiffs submitted a signed statement titled an affidavit from an expert who said he was under oath and believed he was under oath. And as soon as the lack of a jurat was pointed out, the plaintiffs submitted a revised signed statement that fixed that.

There are technicalities in the law, but the result in this case is hyper-technical. Notably, the experienced medical malpractice defense counsel defending this case had no objection to the original certificate of merit affidavit from Dr. Tad Gerlinger. Instead, they spent months defending this case, participated in a mediation, and put a settlement offer on the table. Presumably, they were as surprised by the breadth of the *Miller* and *Banwart* decisions as plaintiffs' counsel, many other medical malpractice lawyers, and the editors and authors of the Iowa Practice treatise (whose form plaintiffs' counsel utilized). I would reverse and remand.

### I. The Statute.

Iowa Code section 147.140(1) provides,

> 1. *a.* In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in

the practice of that profession or occupation or in patient care, which includes a cause of action for which expert testimony is necessary to establish a prima facie case, the plaintiff shall, prior to the commencement of discovery in the case and within sixty days of the defendant's answer, serve upon the defendant a certificate of merit affidavit signed by an expert witness with respect to the issue of standard of care and an alleged breach of the standard of care. The expert witness must meet the qualifying standards of section 147.139.

*b.* A certificate of merit affidavit must be signed by the expert witness and certify the purpose for calling the expert witness by providing under the oath of the expert witness all of the following:

(1) The expert witness's statement of familiarity with the applicable standard of care.

(2) The expert witness's statement that the standard of care was breached by the health care provider named in the petition.

But section 147.140(6) recognizes that only substantial compliance with section 147.140(1) is required:

6. Failure to *substantially comply* with subsection 1 shall result, upon motion, in dismissal with prejudice of each cause of action as to which expert witness testimony is necessary to establish a prima facie case.

(Emphasis added.)

**II. This Case.**

**A. The Alleged Malpractice.** In March 2022, Richard Rarick—a sixty-three-year-old man who had undergone a right knee replacement several years earlier—went through arthroscopic surgery. The surgery was to address arthrofibrosis (excessive scar tissue) in Rarick's knee. Due to the alleged negligence of the orthopedic surgeon, the surgery didn't go well. Rarick ended up with his right leg amputated above the knee.

Rarick and his wife sued the surgeon—Dr. Wesley Smidt—and the professional corporation where Dr. Smidt worked for medical malpractice.

**B. The Original Certificate of Merit Affidavit.** Well before the section 147.140(1) deadline, plaintiffs served a certificate of merit affidavit executed by Dr. Tad Gerlinger. The document was captioned "CERTIFICATE OF MERIT AFFIDAVIT," and it began, "The undersigned, being first duly sworn on oath, deposes and states as follows: . . . ."

After setting forth Dr. Gerlinger's qualifications, including the fact that Dr. Gerlinger was also an orthopedic surgeon, the document set forth Dr. Gerlinger's familiarity with the applicable standard of care and his opinion that Dr. Smidt had breached that standard of care. Additionally, Dr. Gerlinger attached a signed report explaining in more detail how Dr. Smidt had violated the standard of care.

Finally, the document concluded, "The above information is true and correct to the best of my knowledge and belief." Below that appeared Dr. Gerlinger's signature.

In fact, Dr. Gerlinger's certificate of merit affidavit complied exactly with the certificate of merit affidavit form contained in the respected Iowa Practice series. *See* 10 Barry A. Lindahl, *Iowa Practice Series: Civil Practice Forms* § 78:12, at 1087–88 (2025 ed. 2025).

Things stood that way for over a year. The parties conducted fact and expert discovery. They went through an unsuccessful mediation.

**C. Our *Miller* Decision.** Then, in late May 2024, we decided *Miller*, 7 N.W.3d 367. The specific issue in *Miller* was whether a signed letter from an expert on hospital letterhead—but not verified in any way—complied with the requirements of section 147.140. *Id.* at 370–71, 375. Nonetheless, we made a broad holding that substantial compliance with section 147.140 could occur only if there was either (1) a statement under oath *before a person authorized to*

*administer oaths*, or (2) a signed declaration that said expressly it was made *under penalty of perjury. Id.* at 375–76.

**D. The Parties' Filings in Response to *Miller.*** Responding to *Miller*, the plaintiffs supplemented their previous certificate of merit affidavit with additional materials from Dr. Gerlinger. These were: (1) a corrected version of the certificate of merit that was identical to the prior version, except it was signed before a notary; and (2) an additional explanatory affidavit. In the latter, Dr. Gerlinger averred that when he signed the original certificate of merit affidavit, he firmly believed that he was under oath and that his statements were made under penalty of perjury.

The defendants filed a motion to dismiss based on *Miller*, which the district court granted.

**III. Plaintiffs Have Substantially Complied with the Statute.**

**A. Plaintiffs Have Met the Objectives of the Statute.** "Substantial compliance means 'compliance in respect to essential matters necessary to assure the reasonable objectives of the statute.' " *Hummel v. Smith*, 999 N.W.2d 301, 309 (Iowa 2023) (quoting *McHugh v. Smith*, 966 N.W.2d 285, 288–89 (Iowa Ct. App. 2021)). Substantial compliance "means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted." *Dix v. Casey's Gen. Stores, Inc.*, 961 N.W.2d 671, 682 (Iowa 2021) (quoting *Brown v. John Deere Waterloo Tractor Works*, 423 N.W.2d 193, 194 (Iowa 1988)). "[T]he starting point for our analysis is an identification of the purpose served . . . ." *Harrison v. Emp. Appeal Bd.*, 659 N.W.2d 581, 586 (Iowa 2003).

We correctly described the objective of the statute in *Struck v. Mercy Health Services-Iowa Corp.*, 973 N.W.2d 533 (Iowa 2022). There we said that "the

legislative goal" of section 147.140 was "to enable healthcare providers to quickly dismiss professional negligence claims that are not supported by the requisite expert testimony." *Id.* at 541; *see also id.* at 542 ("The statute is meant to end cases *early* (sixty days after the answer) when expert testimony is required."). A timely, signed expert statement that says it is an affidavit under oath followed by a curative jurat fulfills the essential objectives of section 147.140.

What objective of the statute is not met here? Nobody questions Dr. Gerlinger's veracity. He is a West Point graduate, a recipient of the Bronze Star, and a veteran of the Afghanistan and Iraq conflicts. He signed a statement that stated it was under oath, he believed he was under penalty of perjury, and he certainly was under penalty of perjury once the curative jurat was submitted.

The majority does a reasonable job of explaining why the original statement that Dr. Gerlinger signed might not technically qualify as an affidavit. But it does an inadequate job of identifying an objective of section 147.140 that hasn't been met.

In determining whether a party substantially complied with a statute, we look to the record as a whole. *See Hedrick Cmty. Sch. Dist. v. S. Prairie Area Educ. Agency 15*, 433 N.W.2d 746, 751 (Iowa 1988) (reviewing "the whole record" to determine whether there was substantial compliance with a statute); *Bloom v. Arrowhead Area Educ. Agency*, 270 N.W.2d 594, 597 (Iowa 1978) (same). The record here includes both the original, technically noncompliant certificate of merit and the follow-up corrective affidavits from Dr. Gerlinger. *See In re AHST Cmty. Sch. Dist. Pub. Measure "B" Election*, 735 N.W.2d 605, 609 (Iowa 2007) (explaining, in reliance on *Dobbins v. City of Anniston*, 469 So. 2d 583 (Ala. 1985), that substantial compliance would have occurred if the challengers had filed a bond in some amount by the deadline, with later amendment);

*Aladdin, Inc. v. Black Hawk County*, 522 N.W.2d 604, 606 (Iowa 1994) (finding that the county compensation commission substantially complied with the condemnation statute when it provided a report assessing the condemnee's total damages and then provided a supplemental report three weeks later that divided those damages without changing the overall amount).

*Danish Book World, Inc. v. Board of Adjustment*, 447 N.W.2d 558 (Iowa Ct. App. 1989), well illustrates this "full picture" approach to substantial compliance. In that case involving the appeal of a zoning decision, the relevant statute provided (and still provides),

> Any person . . . aggrieved by any decision of the board of adjustment under the provisions of this chapter . . . may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

*Id.* at 559 (omissions in original) (quoting Iowa Code § 414.15 (1987)); *see* Iowa Code § 414.15 (2023). The plaintiffs filed their petition with the district court within thirty days, but they omitted to verify it until later. *Danish Book World, Inc.*, 447 N.W.2d at 559. Nevertheless, the court of appeals found that the plaintiffs "substantially complied with the statute." *Id.*

Out-of-state medical malpractice authority also supports the plaintiffs' position here. In *Vaughan v. Mashburn*, 817 S.E.2d 370, 372–73 (N.C. 2018), the plaintiff in a medical malpractice case filed her complaint with a certification containing language from an outdated version of the statute. After the statute of limitations had run, the plaintiff attempted to correct the deficiency. *Id.* The North Carolina Supreme Court allowed the amendment and held it could properly relate back to the date of the original complaint. *Id.* at 379–80. The court explained that the purpose of the law was to weed out non-meritorious lawsuits.

*Id.* at 379. "But when a plaintiff prior to filing has procured an expert who meets the appropriate qualifications and, after reviewing the medical care and available records, is willing to testify that the medical care at issue fell below the standard of care, dismissing an amended complaint would not prevent frivolous lawsuits." *Id.*

In *Frame v. Millinocket Regional Hospital*, 82 A.3d 137, 139 (Me. 2013), the Supreme Judicial Court of Maine was faced with the question of whether an untimely but sworn notice of claim could relate back to a timely filed but unsworn notice of claim. The court concluded that it could. *Id.* at 146. It explained that "the relation-back principle . . . may be applied to permit the correction of a timely but defective filing." *Id.* at 143. Allowing relation-back was "consistent with the purposes of the" statute. *Id.* at 144. "An amendment that cures a technical defect fulfills the statutory objectives of deciding claims on their merits and encouraging the early withdrawal of meritless claims." *Id.*

I find these cases persuasive. Although styled as "relation back" cases rather than substantial-compliance cases, they follow the same approach of allowing curative certificates in medical malpractice cases where the objectives of the statute are nonetheless served.

**B. *Miller* and *Banwart* Mistakenly Adopted Strict Compliance as the Standard for Substantial Compliance.** *Miller* was correctly decided on its facts. It involved an expert who had simply *signed a letter* by the section 147.140 deadline. *Miller*, 7 N.W.3d at 371–72. When the defendants moved to dismiss the case after the deadline, the plaintiffs supplemented the record with a signed declaration under penalty of perjury from the same expert. *Id.* at 372. But the original submission would not have bound the expert; it was just a letter.

The initial submissions in *Banwart* were better. There the plaintiffs served timely, signed expert statements that were titled "Certificate of Merit Affidavit" and began, "In compliance with Iowa Code Section 147.140, [the expert] does hereby affirm and state, as follows . . . ." *Banwart*,18 N.W.3d at 271. But the plaintiffs took no curative steps when the defendants moved for summary judgment. *Id.* For this reason, *Banwart*—in my view—also didn't amount to substantial compliance.

Two members of our court dissented in *Banwart. Id.* at 278 (McDermott, J., dissenting). They argued that "a written affirmation, by definition, exposes its signer to penalties of perjury." *Id.* I am still not persuaded by that view.

Still, with hindsight, I believe some of our language in *Miller*, which we then reiterated in *Banwart*, was too sweeping. We shifted the substantial-compliance inquiry from what it had been in *Struck*. The standard should have remained whether the plaintiffs complied with the essential points necessary to assure the reasonable objectives of the *statute*—i.e., whether there was a qualified expert committed to testify at the beginning of the case that malpractice had occurred. Instead, we laser-focused on whether any signed statements filed before the deadline, by themselves, *strictly complied* with all the legal requirements of an affidavit. *Miller*, 7 N.W.3d at 375; *Banwart,* 18 N.W.3d at 273–74. We substituted strict compliance for substantial compliance.

A careful review of the opinion shows this. We used *State v. Carter*, 618 N.W.2d 374 (Iowa 2000) (en banc), as our guidepost for determining whether substantial compliance with Iowa section 147.140 had occurred. *See Miller*, 7 N.W.3d at 375. But *Carter* was a criminal prosecution for perjury. 618 N.W.2d at 375. The issue was whether a defendant could be prosecuted for perjury—i.e., making a false statement of material facts while under oath or

affirmation. *Id.* at 375–76. The defendant there had merely signed a form stating, "I certify . . . that the information I have provided on this registration application is true and correct." *Id.* at 375. What's necessary for a criminal prosecution for perjury—i.e., strict compliance—shouldn't define the outer limits of substantial compliance with section 147.140, at least where the expert completes any missing technical formalities as soon as they are notified of a potential problem.

We provided only one example in *Miller* of something short of full compliance that, nevertheless, could amount to "substantial compliance." *See Miller*, 7 N.W.3d at 375 n.3 (discussing *Ames Evening Times v. Ames Wkly. Trib.*, 168 N.W. 106, 107 (Iowa 1918) (per curiam)). But upon examination, there was actually *full* compliance in that case. In *Ames Evening Times v. Ames Weekly Tribune*, 168 N.W. at 107, the clerk of court left off his official seal (before the court allowed a later amendment). We said that "the seal constituted no part of the oath of the affiant" and "the court could well have held the affidavit sufficient even without the amendment." *Id.*

*Miller* also praised one out-of-state case, *Tunia v. St. Francis Hospital*, 832 A.2d 936 (N.J. Super. Ct. App. Div. 2003), for taking the proper approach to substantial compliance. *Miller*, 7 N.W.3d at 374–75. But *Tunia* involved different facts and isn't the last word in New Jersey. In *Reid v. St. Barnabas Hospital*, 2010 WL 2090032, at *2–3 (N.J. Super. Ct. App. Div. 2010) (per curiam), an unpublished case which we relegated to a footnote in *Miller, see* 7 N.W.3d at 377 n.4, the same New Jersey court found substantial compliance when the plaintiff submitted a timely expert report and later submitted the same report under oath from the doctor "[o]nce she understood that an actual oath was required." In other words, on facts resembling the present case, the New Jersey

court decided that there had been substantial compliance. *See Reid*, 2010 WL 2090032, at *3.

Substantial compliance shouldn't turn on nomenclature and shouldn't "exalt form over substance." *Puente v. Civ. Serv. Comm'n*, 7 N.W.3d 15, 22 (Iowa 2024). We recently decided that when the statute requires a "notice of appeal" to be filed within thirty days but a party files a "petition for judicial review" within thirty days, that's substantial compliance. *Id.* at 17, 21–22. So too, when a timely certificate of merit affidavit signed by an expert says it's an affidavit under oath—and the expert adds a jurat when the problem is called to the plaintiffs' attention—that's substantial compliance as well. It would exalt form over substance to conclude otherwise.

**C. The Legislative History Proves Only That the Statute Was Hastily Written.** The concurring opinion urges us to take into account the legislative history of Iowa Code section 147.140. The original version of the bill introduced in the general assembly during the 2017 session stated as follows:

> 5. *a.* Failure to substantially comply with subsection 1 shall result, upon motion, in dismissal with prejudice of each cause of action as to which expert witness testimony is necessary to establish a prima facie case.

> *b.* A written notice of deficiency may be served upon the plaintiff for failure to comply with subsection 1 because of deficiencies in the certificate of merit affidavit or answers to interrogatories. The notice shall state with particularity each deficiency of the affidavit or answers to interrogatories. The plaintiff shall have twenty days to cure the deficiency. Failure to comply within the twenty days shall result, upon motion, in mandatory dismissal with prejudice of each action as to which expert witness testimony is necessary to establish a prima facie case. A party resisting a motion for mandatory dismissal pursuant to this section shall have the right to request a hearing on the motion.

S.F. 465, 87th G.A., 1st Sess. § 5 (Iowa 2017) (senate bill as introduced, prior to amendments), https://www.legis.iowa.gov/legislation/BillBook?ga=87&ba=SF%20465&v=i

[https://perma.cc/BD35-8SAH]. In the final version, subsection *b* was dropped. S.F. 465, 87th G.A., 1st Sess. § 4 (Iowa 2017) (senate bill as enrolled), https://www.legis.iowa.gov/legislation/BillBook?ga=87&ba=SF%20465&v=e [https://perma.cc/7SSB-L45B]. The concurring opinion argues that this means a subsequent cure cannot be taken into account in determining whether there was substantial compliance with the statute.

But one can often read legislative history in different ways. *See, e.g., Iowa Dental Ass'n v. Iowa Ins. Div.*, 831 N.W.2d 138, 146 n.3 (Iowa 2013) ("It is difficult to draw definitive conclusions from this legislative history. One might infer that Senator Warnstadt's amendment was intended to accomplish something different from Senator McCoy's, or that it was just viewed as a better way of saying the same thing."). In the original bill, subsection *a* required substantial compliance; subsection *b* gave the defendant the option of notifying the plaintiff of the specific deficiency and, if the plaintiff failed to correct it, the case would be dismissed. S.F. 465, 87th G.A., 1st Sess. § 5 (Iowa 2017) (senate bill as introduced). Yet it's quite possible that the legislature dropped subsection *b* as *unneeded* because substantial compliance covered the same ground and was fair to both sides.

The statute is not airtight. For example, as we previously pointed out,

> Iowa Code section 147.140(1) sends mixed messages as to when a certificate of merit is required. The statute says it applies to any action in which an expert is needed to establish a prima facie case, but then it only requires the expert to address the standard of care and breach elements in the certificate of merit.

*Est. of Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, 838–39 (Iowa 2023).

Also, section 147.140(5) states,

5. If the plaintiff is acting pro se, the plaintiff shall have the expert witness sign the certificate of merit affidavit *or answers to interrogatories referred to in this section* and the plaintiff shall be bound by those provisions as if represented by an attorney.

(Emphasis added.) But it turns out there are *no* "answers to interrogatories referred to in this section."

These loose ends in the final statute make it even more perilous to try to draw conclusions from an ambiguous item in the legislative history—i.e., the collapse of a notice-and-cure provision and a substantial-compliance provision into one substantial-compliance provision. As we've already discussed, under our precedent, a curative filing *bears on* whether there was substantial compliance. *See In re AHST Cmty. Sch. Dist. Pub. Measure "B" Election*, 735 N.W.2d at 609; *Aladdin, Inc.,* 522 N.W.2d at 606–07; *Danish Book World, Inc.*, 447 N.W.2d at 559.

We've already stated that "[w]e will not read more into [section 147.140] than it says." *Ronnfeldt v. Shelby Cnty. Chris A. Myrtue Mem'l Hosp.*, 984 N.W.2d 418, 426 (Iowa 2023). I would follow the same approach with respect to the legislative history.

**D. Stare Decisis Should Not Deter Us from Appropriately Narrowing the Scope of *Miller* and *Banwart*.** I agree that stare decisis should carry some weight. But not a great deal of weight because *Miller*, 7 N.W.3d 367, is only two years old and *Banwart,* 18 N.W.3d 267, is only one year old.[8] Also, while *Miller* and *Banwart* offer a defensible interpretation of section 147.140—again, I joined the court's decisions—it's not the interpretation that practicing attorneys had

---

[8]It can be noted that we followed *Miller* in the brief, unpublished decision in *Shontz v. Mercy Medical Center-Clinton, Inc.*, 2024 WL 2868931, at *1–2 (Iowa June 7, 2024) (per curiam). But *Shontz* has no precedential weight of its own. *See* Iowa R. App. P. 6.904(2)(*a*)(2); *see also Banwart,* 18 N.W.3d at 282 (McDermott, J., dissenting).

given to the statute. Truth be told, *Miller* and *Banwart* have brought chaos and disruption. Pending before our court alone are several other unresolved certificate of merit cases where a timely, original certificate was signed by the expert who attested to its truth, but the document lacked a jurat or the words "under penalty of perjury." In fact, in one of these cases, in a prior appeal, we said the certificate was signed "under oath" and described it as an "affidavit," although apparently it didn't conform to the *Miller/Banwart* rules and is now being challenged. *See Jorgensen v. Smith,* 2 N.W.3d 868, 872 (Iowa 2024). In another case, the parties went all the way through trial, culminating in a $97 million verdict, before *Miller* came along and someone thought of raising an issue with the unsworn certificates of merit. *See Tarbox ex rel. S.K. v. Obstetric & Gynecologic Assocs. of Iowa City and Coralville, P.C.,* 13 N.W.3d 546, 554 (Iowa 2024).

The record in this case offers evidence of that disruption. One experienced medical malpractice attorney submitted an affidavit as follows:

> We understood that the law required us to demonstrate to defendants that we had engaged a qualified expert for each allegation about any departure from the standard of care in order to assure the defendant(s) and the court that we are bringing a case that we believed to be meritorious after a good faith consultation.

> To that end, we made sure that the experts were and recited that they were qualified and familiar with the standard of care applicable to the treatment that was allegedly negligent and that it was their professional opinion that the treatment departed from the standard of care.

> It was common practice and custom to serve certificates of merit on defendants that were signed by qualified experts, but did not contain a jurat, notarization, or the language "under penalty of perjury."

> In case after case, these certificates of merit were deemed substantial compliance so that they were not challenged either by defendants or by the courts.

(Paragraph numbers omitted.)

Another experienced medical malpractice attorney provided the following affidavit:

> After the enactment of Iowa Code 147.140, I, along with other members of the plaintiff medical malpractice bar began to utilize Certificates of Merit.
>
> I understood and interpreted Iowa Code 147.140 to require us to demonstrate early on to the defendants that I had done what I always did working up a medical malpractice case for filing, namely retaining a qualified expert to review the medical [r]ecords and, if appropriate, provide an opinion regarding any departures from the standard of care in order to assure the defendant(s) and the court that the case was meritorious and filed in good faith.
>
> To that end, qualified experts who were familiar with the applicable standard of care certified that it was their professional opinion that the defendant provider(s) breached the standard of care.
>
> It was my practice, similar to the common practice and custom of other plaintiff medical malpractice attorneys, to serve Certificates of Merit on defendants that were signed by qualified experts, but did not contain a jurat, notarization, or the language "under penalty of perjury."
>
> I have personally prosecuted numerous medical malpractice cases with Certificates of Merit that contained no jurat, notarization, or the language "under penalty of perjury" and have not had those Certificates of Merit challenged by the defendants or the courts for lacking a jurat, notarization, or the language "under penalty of perjury." The vast majority of these cases were tried to verdict or resulted in settlement with payment to the plaintiff(s). It was not until July 2023, that a defendant challenged (unsuccessfully) a certificate I served on that basis.

(Paragraph numbers omitted.)

There are circumstances that warrant a vigorous application of stare decisis; this isn't one of them.

**IV. Conclusion.**

One final thought. We cut slack to statements by attorneys. An unsworn professional statement by an attorney "has the effect of an affidavit." *Gilbride v. Trunnelle*, 620 N.W.2d 244, 251 (Iowa 2000) (en banc) (quoting *State v. Williams*, 315 N.W.2d 45, 53 (Iowa 1982)). At times, we deem an unsworn professional statement by an attorney to have the effect of an affidavit where the law requires sworn testimony. *See Osmic v. Nationwide Agribus. Ins.*, 841 N.W.2d 853, 864 (Iowa 2014) (noting that "the summary judgment record contains neither an affidavit nor a professional statement from Esad's counsel"); *Simmons v. State Pub. Def.*, 791 N.W.2d 69, 73 (Iowa 2010) ("Simmons also filed a written professional statement."). It seems maybe a bit unseemly for us to bend the rules for our own profession while taking a cramped view of substantial compliance with respect to the signed statements made by medical professionals.

For the foregoing reasons, I dissent and would reverse and remand this case for trial.

**McDermott, Justice (dissenting).**

By its own terms, the certificate-of-merit statute requires only that a plaintiff's expert "substantially comply" with its requirements. Iowa Code § 147.140(6) (2023). In this case, the expert's certificate began, "The undersigned, being first *duly sworn on oath*, deposes and states as follows: . . . ." (Emphasis added.) To find that this language fails to substantially comply with the law, as the majority does, is to read the legislature's own words out of the statute. The majority's demand for *technical* perfection imposes a burden on plaintiffs that the legislature simply never demanded. The majority suggests it is practicing faithful textualism; in reality, it employs a selective reading that scrubs the words "substantially comply" from the statute. Respectfully, I dissent.

We begin and end with the language of the law—all of it. Under Iowa Code § 147.140(1)(*a*), a plaintiff in a medical malpractice action must serve a certificate of merit within sixty days of the defendant's answer. The certificate "must be signed by the expert witness and certify the purpose for calling the expert witness by providing under the oath of the expert witness" opinions about both the standard of care and its breach. *Id.* § 147.140(1)(*b*). The statute does not demand strict compliance; indeed, it expressly provides that dismissal is reserved only for a "[f]ailure to substantially comply" with the requirements. *Id.* § 147.140(6).

In this case, the certificate of merit by the Raricks' expert, Dr. Gerlinger, opened with a clear invocation: "The undersigned, being first duly sworn on oath, deposes and states as follows: . . . ." The ten numbered paragraphs that followed more than satisfied the content requirements of the statute. Dr. Gerlinger confirmed his status as a board-certified specialist in orthopedic surgery; his

familiarity with the standard of care for Mr. Rarick's specific condition; his review of the medical records; and his professional opinion that the defendants breached the standard of care. Just above his signature, he concluded: "The above information is true and correct to the best of my knowledge and belief." He even attached an additional expert report, certifying that it conveyed "an accurate statement of my opinions to which I will testify under oath."

"Substantial compliance" means "compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." *Hummel v. Smith*, 999 N.W.2d 301, 309 (Iowa 2023) (quoting *McHugh v. Smith*, 966 N.W.2d 285, 288–89 (Iowa Ct. App. 2021)). What are the "reasonable objectives" of the certificate-of-merit statute? In *Miller v. Catholic Health Initiatives-Iowa, Corp.*—the case that launched a thousand certificate-of-merit ships in Iowa courts—we said that the statute's reasonable objective is to provide "the defending health professional a chance to arrest a baseless action early in the process if a qualified expert does not certify that the defendant breached the standard of care." 7 N.W.3d 367, 374 (Iowa 2024) (quoting *Est. of Fahrmann v. ABCM Corp.*, 999 N.W.2d 283, 287–88 (Iowa 2023)).

In its analysis of substantial compliance, the majority confuses the statute's objective with the means used to achieve it. The *objective* of the statute isn't the production of a perfect affidavit; the *objective*, as we said in *Miller*, is cutting off baseless malpractice lawsuits early where plaintiffs lack a sworn certification from an expert on the standard of care and the defendant's breach. *Id.* The majority's fixation on technical compliance with the law governing affidavits misses this point.

Even if our focus were not on the statute's broader objectives but instead on the majority's narrow affidavit-compliance inquiry, Dr. Gerlinger's certificate

of merit still substantially complies with the statute. In *Miller*, we said that to substantially comply with the affidavit requirement, the document must satisfy the basic elements of an affidavit. *Id.* at 375. The Iowa Code defines an affidavit as "a written declaration made under oath, without notice to the adverse party, before any person authorized to administer oaths within or without the state." Iowa Code § 622.85. We held that the document in *Miller*—a signed letter on a hospital's letterhead that lacked an affidavit, a sworn oath, or any declaration that the expert signed it under penalty of perjury—failed to meet the statute's requirements. 7 N.W.3d at 371, 374–75.

We also noted in *Miller* other components of an affidavit that were similarly missing, including a jurat from an oath-administering official. *Id.* at 375. Although Dr. Gerlinger's certificate does not contain a jurat, Iowa Code § 622.1(1) allows an unsworn statement to suffice if it "recites that the person certifies the matter to be true under penalty of perjury." Dr. Gerlinger's certificate does not recite the words "under penalty of perjury," but it didn't need to.

Again, § 147.140(6) requires only that the certificate substantially comply. In considering substantial compliance and thus what is "necessary to assure the reasonable objectives" specifically of the statute's affidavit requirements, we return to *Miller*, where we said that administering an oath or including the under-penalty-of-perjury language simply "emphasizes the obligation to be truthful." 7 N.W.3d at 374–75 (first quoting *Hummel*, 999 N.W.2d at 309; and then quoting *State v. Carter*, 618 N.W.2d 374, 378 (Iowa 2000) (en banc)). The key inquiry is whether "the oath or affirmation was accomplished in such a way that the person's conscience was bound." *Id.* at 375 (quoting *Carter*, 618 N.W.2d at 376).

To state the point here using the language of § 622.1(1), to bind his conscience in signing the certificate, Dr. Gerlinger needed to subject himself to penalties of perjury. His certificate's introductory line—"being first duly sworn on oath, deposes and states as follows"—does exactly that. An oath, by definition, subjects the declarant to penalties of perjury. "The person making the oath implicitly invites punishment if the statement is untrue or the promise is broken. The legal effect of an oath is to subject the person to penalties for perjury if the testimony is false." *Oath, Black's Law Dictionary* 1289 (11th ed. 2019). Perjury occurs when a person, "while *under oath* or affirmation in any . . . matter in which statements under oath or affirmation are required or authorized by law, knowingly makes a false statement of material facts." Iowa Code § 720.2 (emphasis added); *see also id.* § 39A.2 (penalizing a person who "[f]alsely swears to an oath" relating to voter registration); *id.* § 321.217 (imposing perjury penalties against a person who "knowingly swears or affirms falsely to any matter or thing required" in Iowa's motor vehicle chapter).

Contrary to the majority's assertion, under the substantial compliance standard, failing to include the words "under penalty of perjury" is not fatal. When evaluating substantial compliance, we generally do not require specific language. *See State v. Duckworth*, 597 N.W.2d 799, 800–01 (Iowa 1999) (per curiam). This no-magic-words principle is especially compelling here because an expert who has submitted a certificate "sworn on oath" has, by that act, made himself subject to penalties of perjury. *See* Iowa Code § 720.2 (defining "perjury" as "knowingly mak[ing] a false statement of material facts" while "under oath"). The majority's approach rejects the "on oath" language in favor of "under penalty of perjury," but that phrase simply identifies what it means to take an oath. *See Oath, Black's Law Dictionary* 1289. As such, Dr. Gerlinger's certificate

of merit substantially complies with § 622.1(1), and in turn complies with § 147.140.

Our decision in *Shontz v. Mercy Medical Center–Clinton, Inc.*, No. 23–0719, 2024 WL 2868931, at *1 (Iowa June 7, 2024) (per curiam) (unpublished opinion), does not mandate the majority's rigid result. *Shontz* is an unpublished opinion from our court. "Unpublished opinions of this court are not precedential," we have said, "which is why our court generally does not cite them." *State v. Shackford*, 952 N.W.2d 141, 145 (Iowa 2020). What's more, the plaintiffs in *Shontz* did not even raise the substantial compliance argument under § 622.1(1). *See* 2024 WL 2868931, at *1. The Raricks, conversely, have argued substantial compliance with § 622.1(1) here, and the district court ruled on the argument below.

Last term, in *Banwart v. Neurosurgery of North Iowa, P.C.*, our court held that an expert who "affirm[ed]" his statements failed to substantially comply with § 147.140. 18 N.W.3d 267, 270, 275 (Iowa 2025). The experts' certifications in *Banwart* began: "In compliance with Iowa Code Section 147.140, [the expert] does hereby affirm and state, as follows . . . ." *Id.* at 271. I dissented from that opinion and would have held that the expert's affirmation substantially complied with the statute's requirements. *Id.* at 282 (McDermott, J., dissenting). But whatever one's view of the affirmation in *Banwart*, the explicit "sworn on oath" language here presents a much easier question.

There is no textual justification for demanding technical perfection where the statute expressly permits substantial compliance. A technical flaw, by definition, is not an "essential matter." *Hummel*, 999 N.W.2d at 309. The majority's rigid insistence on the phrase "under penalty of perjury" fails to apply the substantial compliance standard that the legislature prescribed. If, as in this

case, a certificate achieves the statute's objectives—giving notice of a non-frivolous claim backed by an expert who has bound his conscience "sworn on oath"—it substantially complies. I would reverse the district court's ruling and grant the Raricks the opportunity to pursue their claims.

Oxley, J., joins this dissent.